587 A.2d 749

In re ESTATE OF Gary P. GREENWOOD, Deceased.

Appeal of the ESTATE OF Gary P. GREENWOOD by Lois A. GREENWOOD, Administratrix.

Superior Court of Pennsylvania.

Argued Dec. 4, 1990.

Filed March 11, 1991.

James Hook, Waynesburg, for appellant.

Linda Chambers, Washington, for participating party.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This case concerns an order entered on March 23, 1990, in the Court of Common Pleas of Greene County, Orphans' Court Division, directing that blood samples of the decedent Gary P. Greenwood be made available to the Greene County Domestic Relations Division "for comparison testing". The order is being appealed by Lois A. Greenwood, Administratrix of the Estate of Gary P. Greenwood. We affirm.

The record discloses that a Petition For Citation was filed by Lisa Joann Sowden alleging that she was the illegitimate daughter of the decedent Gary P. Greenwood and one Susan Jane Sowden.

Lois A. Greenwood, having been granted Letters and named the administratrix of her late husband's estate on August 25, 1989, was notified that the petitioner intended to claim an intestate share of the estate as the decedent's illegitimate child. Lois A. Greenwood, despite the petitioner's submission of a birth certificate and affidavits of the decedent's family and friends attesting to the decedent's "acknowledg[ment] ... that he was the father of [p]etitioner", indicated that "the only proof of paternity she w[ould] accept [wa]s proof through blood testing." Paragraphs 6, 7 & 8. However, when the petitioner discovered that the Allegheny County Coroner was in possession of blood and tissue samples of the decedent, "due to a pending investigation into the cause of decedent's death", Lois A. Greenwood refused to authorize release of the samples to test for parentage. *Id.* at 9 & 10.

Based on the petition, the Orphans' Court issued a citation to show cause why Ms. Greenwood should not be directed to release the samples for the purpose of paternity-testing, and a hearing was set to assess arguments on the issues raised. Subsequent thereto, in answer, Lois A. Greenwood denied the petitioner's illegitimate status, averred the bar of the statute of limitations under 23

Pa.C.S.A. § 4343(b) for the petitioner's failure to take any action to establish paternity within eighteen years of the date of her birth, and noncompliance with any of 20 Pa.C. S.A. § 2107's conditions precedent to establishing her right to inherit even though she was born out of wedlock.

Additionally, in a brief submitted in support of her request for court-ordered testing, Lisa Joann Sowden recounted how the administratrix was cooperative, initially, in an effort to have the decedent's blood and tissue tested to resolve the paternity question but, thereafter, did not respond to requests to obtain the samples from the coroner's office of Allegheny County.

In the argument portion of the petitioner's brief, it was urged that, albeit the petitioner would be presenting the testimony of her mother, friends and family of the decedent (to whom had been "acknowledged" by the decedent) on the question of paternity, she wanted the test results as "additional 'clear and convincing evidence' " of her status as an heir. See 20 Pa.C.S.A. § 2107. Further, the inapplicability of 23 Pa.C.S.A. § 4343(b) was contended because of the absence of a "support" action, while the relevancy of 42 Pa.C.S.A. §§ 6131–6137 ("Blood Tests to Determine Paternity") was discussed.

Thereafter, on February 26, 1990, the Orphans' Court heard oral argument from counsel for both sides, and, after taking the case and briefs under advisement, entered an order directing the administratrix to authorize release of the decedent's blood sample for genetic testing. This appeal followed, and, from our examination of the question posed, is not interlocutory. See *Commonwealth ex rel. Weston v. Weston*, 201 Pa.Super. 554, 193 A.2d 782 (1963), wherein a motion to quash an appeal from an order for blood testing to determine paternity, pursuant to 28 P.S. § 307.1 *et seq.* (known as the Uniform Act on Blood Tests to Determine Paternity and reenacted at 42 Pa.C.S.A. § 6131 *et seq.*) was denied. See also *Myers v. Travelers Insurance Co.*, 353 Pa. 523, 46 A.2d 224 (1946), cited in *Weston,* and *Christianson v. Ely,* 390 Pa.Super. 398, 568 A.2d 961

(1990), permitting an appeal from orders requiring a physical examination and blood testing, respectively.

The sole issue proffered for our consideration, which all parties and the court below agree is one of first impression, is:

CAN THE LOWER COURT ORDER THAT A BLOOD TEST BE [PERFORMED, AT THE REQUEST OF AN ILLEGITIMATE CHILD,] AFTER THE DEATH OF AN ALLEGED FATHER?

Appellant's Brief at 2 (Bracketed language added).

Before addressing the merits of the issue posed, we deem an historical perspective is appropriate to appreciate our ruling. Accordingly, at the outset, we observe that the law involving the right of an illegitimate child to inherit through intestate succession has gone through a metamorphosis over the years. For example, at common law, an illegitimate child, who had not been legitimated was *filius nullius* (the child of no one) and incapable of inheriting from anyone. See *Trimble v. Gordon*, 430 U.S. 762, 768, 97 S.Ct. 1459, 1464, 52 L.Ed.2d 31 (1977); *Stone v. Gulf American Fire and Casualty Co.*, 554 So.2d 346, 363 (Ala.1989) (quoting 1 Wendell's Blackstone, 459).

In Pennsylvania, prior to November 26, 1978, Section 2107 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 2107, provided that a person born out of wedlock[1] was to be "considered the child of his mother but not his father." *Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087, 1089 (1983). On November 26, 1978, Section 2107 of the Probate, Estates and Fiduciaries Code was amended to allow illegit-

1. Through the years, various appellations have been used to describe this class of individuals. Initially, the term "bastards" was thought fitting. This was superseded by "illegitimate children", and this has largely given way to the nomenclature "children born out of wedlock." See *Moore v. Goode*, 375 S.E.2d 549, 553 n. 2 (W.Va.1988), citing 6 Ninth Decennial Digest (Part 2) Table I and *Matter of Legitimation of Locklear by Jones*, 314 N.C. 412, 334 S.E.2d 46 (1985).

imate children to inherit through or from their fathers as well as their mothers;[2] to-wit:

(c) Child of father—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any of the following ways:

(1) If the parents of a child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

Act 1978, November 26, P.L. 1269, No. 303, § 1, imd. effective. This amendment was enacted to conform with the United States Supreme Court decision in *Trimble,* supra, wherein the Court held that a classification based upon illegitimacy was required to bear a rational relationship to a legitimate state interest to be constitutional. See *Estate of Hoffman,* supra; *Scott Estate,* 23 Pa.D. & C.3d 236, 237–38 (Dauphin Cty., 1982). The present version of Section 2107 has been held not to violate the equal protection clause of the Fourteenth Amendment. *Id.*

No one disputes that Paragraphs (1) and (2) of Clause (c) of Section 2107 are not applicable to the case at bar. Thus, our inquiry is one of whether the court below had the authority to issue the order for "blood testing" so as to afford the appellee the opportunity to prove by "clear and convincing" evidence that the decedent was her father. 20 Pa.C.S.A. § 2107(c)(3).

---

**2.** The 1972 version of Section 2107 was declared unconstitutional in a consent decree because it improperly discriminated against illegitimate children. See *Matthew For Butler v. Bowen,* 640 F.Supp. 886, 888 (E.D.Pa.1986).

On this point, the court below interpreted Section 2107(c)(3), in conjunction with 20 Pa.C.S.A. § 3538 (subjecting a child born out of wedlock to the same time restraints as applied to other heirs or claimants of an estate) and 42 Pa.C.S.A. § 6133 (permitting court to order the mother, child and alleged father to submit to blood tests where parentage is a relevant fact), to authorize the testing of the decedent's blood samples "for comparison testing" with regard to the appellee's parentage.

The appellant, taking a position contrary to the court below, argues that Lisa Joann Sowden, having attained the age of eighteen, is barred by the eighteen-year statute of limitations under 23 Pa.C.S.A. § 4343(b) from demanding testing of the decedent's blood. We find the rationale of the appellant flawed.

■ First, the eighteen-year statute of limitations under Section 4343(b) is inapposite to the case at bar and cannot be made applicable to Chapter 21 of the intestate succession statute.

Section 4343(b)'s eighteen-year statute of limitations is found in Subchapter B (titled: "Support"), under the all inclusive Chapter 43 captioned: "Support Matters Generally", and reads in pertinent part:

§ 4343. **Paternity.**

(a) Determination.—Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court in a civil action without a jury unless either party demands trial by jury. The burden of proof shall be by a preponderance of the evidence.

(b) Limitation of actions.—

(1) An action or proceeding *under this chapter* to establish the paternity of a child born out of wedlock must be commenced within 18 years of the date of birth of the child.

As amended 1989, December 20, P.L. 654, No. 81, § 1, imd. effective, 23 Pa.C.S.A. § 4343(a) & (b) (Supp.1990–91) (Emphasis added).

When Chapter 43 is reviewed in its entirety, giving it a common sense interpretation, the thrust of the language is geared toward resolving the question attendant to "a duty to support." *Id.* at § 4301(a) *et seq.* Instantly, there is no intent on the part of the appellee to seek the recoupment of any "support" due her during minority. Rather, the main concern of the appellee is attempting to prove "[h]er right to inherit ...; paternity is not just a relevant issue in such matters, it is the primary issue." Appellee's Brief at 8 & 9.

Continuing, the "right to inherit" in the case of intestacy is reserved exclusively to Chapter 21 of the Probate, Estates and Fiduciaries Code, as amended 1978, April 18, P.L. 42, No. 23, § 1, effective in 60 days, 20 Pa.C.S.A. § 2101 *et seq.* (Supp.1990). Within the ambit of the Act of 1978, as cited previously, a person born out of wedlock is not foreclosed from proving parentage, by clear and convincing evidence, *after* the person claimed to be the father dies.[3]

3. Paragraph (3) of Clause (c) of Section 2107 specifically reads that paternity may be proven by clear and convincing evidence, *i.e.*, "that the man *was* the father of the child". (Emphasis added) The use of the term ("was") in the past tense (versus "is" the father of the child) discloses to this Court that the Legislature intended that paternity could be proven "after" the putative father's death. Contrast this scenario to Paragraphs (1) and (2) of Clause (c), which are written in such terms to imply that the events, more likely than not (but not in absolute terms), would transpire before the illegitimate's eighteenth birthday, or at least during his/her lifetime *and* that of the alleged parent(s).

From our scrutiny of the statute in question, there is no indication in the Probate, Estates and Fiduciaries Code, save for the time restraints for filing a claim with an estate before a final decree of distribution is issued, that the Legislature intended to establish a barrier to an illegitimate's right to prove paternity beyond the purported father's lifetime so as to inherit by, from and through the decedent. Contrast *Dickson v. Simpson*, 781 S.W.2d 723, 724 (Tex.App.1989) (Appellant's contest of the probate of the will of her alleged father was barred by the general four-year statue of limitations of Texas); *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988) (180 days after father's death a child claiming right to inherit as illegitimate had to be commenced or claim would be barred; no violation of Equal Protection Clause); *Ganim v. Roberts*, 204 Conn. 760, 529 A.2d 194 (1987) (Putative father who did not establish paternity during lifetime of child, pursuant to dictates of statute, could not recover as heir of child's intestate estate).

To hold otherwise would visit upon the heads of the children the sins of the parents for not acting in a timely manner. This we will

No statute of limitations is set forth in the Probate, Estates and Fiduciaries Code of 1978 which controls the outcome of the case at bar. Cf. *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988), where the Supreme Court of the United States ruled that Pennsylvania's six-year statute of limitations, within which to prove paternity for support, was unconstitutional. In the course of doing so, the Court wrote in relevant part:

In a number of circumstances, Pennsylvania permits the issue of paternity to be litigated more than six years after the birth of an illegitimate child. The statute itself permits a suit to be brought more than six years after the child's birth if it is brought within two years of a support payment made by the father. And in other types of suits, *Pennsylvania places no limits on when the issue of paternity may be litigated. For example, the intestacy statute, 20 Pa.Cons.Stat. § 2107(3) (1982), permits a child born out of wedlock to establish paternity as long as "there is clear and convincing evidence that the man was the father of the child."* Likewise, no statute of limitations applies to a father's action to establish paternity. *In re Mengel*, 287 Pa.Super. 186, 429 A.2d 1162 (1981). Recently, the Pennsylvania Legislature enacted a statute that tolls most other civil actions during a child's minority. 42 Pa.Cons.Stat. § 5533(b) (Supp.1987). In *Pickett* [*v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983)] and *Mills* [*v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982)] similar tolling statutes

not do, see *Bowen v. Gilliard*, 483 U.S. 587, 625, 626, 107 S.Ct. 3008, 3029, 3030, 97 L.Ed.2d 485 (1987) ("'Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as unjust—way of deterring the parent.'" (Citations omitted)), absent a clear signal from the Legislature that a time constraint, be it in the form of the Support statute's eighteen-year period of limitation or an enactment of a statute of limitations applicable to the Probate, Estates and Fiduciaries Code, is apposite or forthcoming by Legislative promulgation. We find neither circumstance present to alter our decision at bar. Cf. *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 1915–16, 100 L.Ed.2d 465 (1988) (Pa. has no statute of limitations for permitting illegitimate child to prove paternity under the intestacy statute, 20 Pa.C.S.A. § 2107(c)(3)).

cast doubt on the State's purported interest in avoiding the litigation of stale or fraudulent claims. 462 U.S. at 15–16, 103 S.Ct., at 2207–08; 456 U.S., at 104–105, 102 S.Ct., at 1557–58 (O'CONNOR, J., concurring); *id.*, at 106, 102 S.Ct., at 1558 (Powell, J., concurring in judgment). Pennsylvania's tolling statute has the same implications here.

A more recent indication that Pennsylvania does not consider proof problems insurmountable is the enactment by the Pennsylvania Legislature in 1985 of an 18–year statute of limitations for paternity and support actions. 23 Pa.Cons.Stat. § 4343(b) (1985). To be sure the legislature did not act spontaneously, but rather under the threat of losing some federal funds. Nevertheless, the new statute is a tacit concession that proof problems are not overwhelming. The legislative history of the federal Child Support Enforcement Amendments explains why Congress thought such statutes of limitations are reasonable. Congress adverted to the problem of stale and fraudulent claims, but recognized that increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who might be accused of paternity, regardless of the age of the child. H.R.Rep. No. 98–527, p. 38 (1983). This scientific evidence is available throughout the child's minority, and it is an additional reason to doubt that Pennsylvania had a substantial reason for limiting the time within which paternity and support actions could be brought.

486 U.S. at 464–465, 108 S.Ct. at 1915–16 (Emphasis added).

Similarly, the Supreme Court of Kentucky refused to adopt the time limitation for support actions to preclude a claimant-adult from establishing his paternity and status as the decedent's heir; the Kentucky Court held, as is germane herein:

Appellants first contend that appellee's claim is barred by KRS 406.031. This contention is wholly without merit as this statute merely places a time limitation upon the bringing of paternity actions for the purpose of establish-

ing a duty of support during the minority of a child. In *Sweat v. Turner*, Ky., 547 S.W.2d 435, 436 (1977), we held that the Uniform Act on Probate, KRS 406, *et seq.*, was

> to give the mother a remedy to compel the putative father to contribute to the support of his illegitimate child. The statute also provides a device affording both the father and mother the right to acknowledge paternity. The statute does not afford the father the right to come into court to have his paternity determined.

> Relying on *Sweat v. Turner, supra,* the Court of Appeals held that "[i]t (the Uniform Act on Paternity) bears no relationship to the laws governing intestate succession." ... [W]e substantially agree with this conclusion....

*Ellis v. Ellis*, Ky., 752 S.W.2d 781, 782 (1988). Accord *Stone*, supra (Alabama's Probate Code similar to Pennsylvania's Probate, Estates and Fiduciaries Code at 20 Pa.C.S.A. § 2107(c)(3) in that clear and convincing evidence of paternity of father, after his death, has no time limitation in which to be instituted); *Garza v. Maverick Market, Inc.*, 768 S.W.2d 273, 275 (Tex.1989) (Inappropriate to incorporate the requirements of legitimation under the Family Code into the Wrongful Death Act); *Moore v. Goode*, 375 S.E.2d 549, 555 (W.Va.1988) (Court declined to look to language in adoption statute as the means by which paternity was to be established for purpose of determining intestate succession).

A second reason for holding that the appellant's logic is marred is that the standard of proof under the support statute *vis-a-vis* the intestate succession law is different.

The burden necessary to establish paternity by a child born out of wedlock for support purposes is by a "preponderance of the evidence." 23 Pa.C.S.A. § 4343(a) (Supp. 1990–91); whereas, the standard of proof required by a child born out of wedlock to establish a right to intestate succession by, from and through a person alleged to be the father of the claimant rises to a level of "clear and convinc-

ing" evidence.[4]  20 Pa.C.S.A. § 2107(c)(3); *Estate of Hoffman,* supra.  Accord *In re Estate of Odom,* 397 So.2d 420, 425 (Fla.App.1981).

■ Given the fact that the appellee sought to establish only heirship in a probate court, in contrast to establishing liability for expenses, support payments or visitation rights of an unmarried parent, the intermingling of the support statute of limitations with the intestate succession laws is unjustified.  See *Henry v. Johnson,* 292 Ark. 446, 730 S.W.2d 495 (1987); see also *Boatman v. Dawkins,* 294 Ark. 421, 743 S.W.2d 800, 802 (1988).  Nor has the Pennsylvania Legislature indicated a melding of the two statutes in clarifying time restraints for bringing a cause of action under the intestate laws.  On the contrary, the Legislature provided at 20 Pa.C.S.A. § 3538, as is herein appropriate:

> ... Except as herein otherwise provided, a person born out of wedlock shall have the same rights in an estate and shall be subject to such time limitations and to such procedures as are applied to any other heir or claimant against an estate.

Act of 1978, November 26, P.L. 1269, No. 303, § 2, imd. effective (Supp.1990–91).

■ At bar, we read the presence of no time limitations that would have precluded the appellee from instituting the cause of action ("citation") seeking a test of the decedent's blood samples.  See footnote 3, supra.

It is beyond peradventure that proof problems have always been in the forefront of counseling against condoning an illegitimate's claim of paternal inheritance.  This is an area with which the States have an interest of considerable magnitude.  *Trimble,* supra, 430 U.S. at 771, 97 S.Ct. at 1465; *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 170, 92 S.Ct. 1400, 1404, 31 L.Ed.2d 768 (1972); *Labine v. Vincent,* 401 U.S. 532, 538, 91 S.Ct. 1017, 1020, 28 L.Ed.2d 288 (1971).

---

**4.** The clear and convincing standard of proof is higher than a preponderance of the evidence, but it is less than the requirement of establishing proof beyond a reasonable doubt.

The interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved. Establishing maternity is seldom difficult. As one New York Surrogate's Court has observed: "[T]he birth of the child is a recorded or registered event usually taking place in the presence of others. In most cases the child remains with the mother and for a time is necessarily reared by her. That the child is the child of a particular woman is rarely difficult to prove." *In re Ortiz*, 60 Misc.2d 756, 761, 303 N.Y.S.2d 806, 812 (1969). Proof of paternity, by contrast, frequently is difficult when the father is not part of a formal family unit. "The putative father often goes his way unconscious of the birth of a child. Even if conscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know *who* is responsible for her pregnancy." *Ibid.* (emphasis in original); accord, *In re Flemm*, 85 Misc.2d 855, 861, 381 N.Y.S.2d 573, 576–577 (Surr.Ct. 1975); *In re Hendrix*, 68 Misc.2d [439] at 443, 326 N.Y. S.2d [646] at 650 [ (Surr.Ct.1971) ]; cf. *Trimble, supra*, 430 U.S., at 770, 772, 97 S.Ct., at 1465, 1466.

*Lalli v. Lalli*, 439 U.S. 259, 268–69, 99 S.Ct. 518, 525, 58 L.Ed.2d 503 (1978). However, albeit "the lurking problems with respect to proof of paternity ... are not to be lightly brushed aside ...," *Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), " 'neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.' " *Trimble*, supra, 430 U.S. at 771, 97 S.Ct. at 1466.

■ We find that *Trimble* and its progeny were preoccupied with a "proof problem" that has been ameliorated by the advancements made in the medical field with regard to blood testing. See *Alexander v. Alexander*, 42 Ohio Misc.2d 30, 537 N.E.2d 1310 (Probate Court of Franklin Cty., Ohio, 1988). As our learned colleague Judge Tamilia observed in *Nichols v. Horn*, 363 Pa.Super 301, 525 A.2d

1242 (1987), on this exact topic of a state limiting intestate inheritance to a child born out of wedlock:

Formerly, an important consideration that mitigated against an extended window of legal susceptability [*sic* ], was the difficulty of proof as time passed. This has been consdierably [*sic* ] reduced with the advent of sophisticated blood and tissue matching procedures such as the Homologous Lucocyte [*sic* ] Antigen test. In the foreseeable future, it is likely that techniques will be capable of establishing, with certainty, the identity of the father instead of indicating the probability of paternity or exclusion of a man as the child's father. Thus the matter of proof is less a consideration than the need to have finality as to liability and reasonable expectation that a life and lives will not be badly disrupted after a certain time.

363 Pa.Super. at 308, 525 A.2d at 1245. Additionally, our Supreme Court has acknowledged that Human Leucocyte Antigen (HLA) blood grouping tests establish, in the opinion of experts interpreting the results, as high as a 99.99 percent probability that the blood of the person tested was the biological father of the illegitimate offspring. *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986). And, as such, the HLA test, although not conclusive, may be introduced as "some evidence of paternity." *Id.*, 511 Pa. at 426, 515 A.2d at 529. Accord *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983). The appellant-administratrix concedes as much in her brief to us, yet she seeks to withhold permission to test the decedent's blood in the belief that by doing so she can avoid having "conclusive" proof of paternity presented to the Orphans' Court. It is almost as if the appellant is saying: "I will withhold evidence that may potentially prove beneficial to the appellee and detrimental to me", see appellee's brief at 8 where it is written:

The Administratrix denied the use of the blood sample and continues to make that objection even though under 42 Pa.C.S.A. § 6136 we understand that if the tests exclude her husband as the father, that fact can be introduced to prove non-paternity. However, because of

the case of *Turek v. Hardy*[,] 458 A[.]2d 562 [312 Pa.Super. 158] (1983) ... the Superior Court has ruled that the blood test results could be introduced as proof of paternity. Therefore, to eliminate any other conclusion we will continue to resist use of the blood sample.

Thus, we find both statutory and public policy considerations justifying an affirmance of the court's order.

Initially, we observe that 42 Pa.C.S.A. § 6133 authorizes a court to order a "mother, child and alleged father to submit to blood tests" where, in "any matter subject to th[e] subchapter [known as Uniform Act on Blood Tests to Determine Paternity] in which paternity, parentage or the identity of a child is a relevant fact," the court can act *sua sponte* or at the initiation of a claimant to resolve the question left open.[5] Relevancy is extant.

■ Secondly, public policy is in favor of eliminating the stigma of illegitimacy, and one of the means by which to do so is by HLA testing ordered by the court and the admission of the results as "some evidence of paternity." See *Turek,* supra; see also *Ptaszkiewicz Estate,* 5 Pa.Fid. Rptr.2d 208, 210 (O.C.Allegheny Cty., 1985).

*Sub judice,* the appellee "is prepared to not only lay a proper foundation for any scientific testing performed to

5. Section 6133 reads in its entirety:

§ 6133. Authority for test.

In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require.

Act of 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S.A. § 6133 (1982). Because the identity of the child and father is germane, Section 6133 is activated and can be implemented as was done instantly. The results of the test, however, are not an *absolute* indication of paternity (as believed by the appellant), but only some evidence of the parent-child genetic linkage. *Smith v. Shaffer,* 511 Pa. 421, 515 A.2d 527 (1986).

establish paternity[.6] but, is also prepared to present documentary and testimonial evidence as well" to prove that the decedent, Gary P. Greenwood, was her biological father and, as such, entitles her to inherit from his intestate estate. See Appellee's Brief at 7.

■ Our reading of the statutes and case law indicates that where a decedent's blood sample is available for testing, which might conclusively eliminate him as the father or be used as some evidence of paternity, it is a "relevant" factor which should not be withheld from the testing mechanisms of today's medical procedures to facilitate a resolution on an issue of paternity since "th[is] form[ ] of proof ... do[es] not compromise the State['s] interests." *Trimble*, supra, 430 U.S. at 772 n. 14, 97 S.Ct. at 1466 n. 14.

■ More particularly, there is no evidence that the Commonwealth of Pennsylvania's concern with the accurate and efficient disposition of the decedent's property would be compromised or jeopardized by allowing the blood test ordered by the court at bar, nor is there any indication that the protection against spurious claims of paternity is undermined. Cf. *Matters of Erbe*, 457 N.W.2d 867, 870 (S.D. 1990), quoting *In re Estate of Blumreich*, 84 Wis.2d 545, 267 N.W.2d 870, 877 (1978) ("Information about his blood, which might conclusively eliminate him as the father, might not be available to his estate. His death ... require[d] that a posthumous claim of paternity be supported by the types of documented evidence approved under [the State statute]."); *Estate of Hoffman*, supra (Illegitimate claimant and decedent had different blood types which, along with other evidence, failed to prove by clear and convincing evidence a claim to estate property).

■ We have no intention at this time, nor could we if we so desired,[7] of assessing the weight of the appellee's evi-

6. See *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983).

7. The appellant's challenge premised upon the claimed violation of the Fourth Amendment (illegal search and seizure) need not be reviewed as to foundation since it was not proffered before the court below. It

dence to determine whether she can prove her claim by clear and convincing evidence.[8] Nonetheless, we do note that the passage of time (one month following the grant of Letters the appellee sought a citation to obtain a rule to show cause to establish heirship) did not prejudice the appellant; notification to the appellant came by letter (dated September 26, 1989) once the Letters of Administration were granted (August 25, 1989). See Appellee's Petition For Citation, Paragraphs 4 & 5; Appellant's Answer To Petition For Citation, Paragraphs 4 & 5. In such a case, neither the Commonwealth's legitimate interest in the orderly administration of estates nor in finality will be affected by the outcome of the case. Also, the two preceding reasons cannot be urged seriously as causes justifying the application of the eighteen-year statute of limitations for support to the intestate succession statute. Cf. *Henson v. Jarmon*, 758 S.W.2d 368, 371 (Tex.App.1988). Accordingly, we see no reason to look solely to the support statute in evaluating the right of an illegitimate to inherit by intestate succession, nor the statute of limitations contained therein for doing so. See *Manuel v. Spector*, 712 S.W.2d 219 (Tex.App.1986).

Consequently, we deem the order of the Orphans' Court, directing the administratrix to relinquish the blood samples

is found waived. *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527, 530 (1986).

**8.** For cases evaluating the evidence necessary to establish clear and convincing proof of paternity, see: *Matthew For Butler v. Bower*, 640 F.Supp. 886 (E.D.Pa.1986) (Testimonial evidence offered by plaintiff, her daughter and the decedent's brother did not achieve the level of strict proof required by *Estate of Hoffman*, infra); *Moore v. Goode*, 375 S.E.2d 549 (W.Va.1988) (Summary judgment affirmed for pleadings failed to establish by clear and convincing evidence that the appellant was the daughter of the decedent so as to collect under his estate; *e.g.*, pleadings, Justice of Peace complaint, ancient document of compromise, birth certificate, marriage license, and deposition testimony all were flawed in some respects so as to undermine admissibility or credibility referred to therein); *Estate of Hoffman*, 320 Pa.Super. 113, 466 A.2d 1087 (1983) (Decedent's statements, insurance policy, census records, decedent's watch and bible, letter and non-matching blood types were not clear and convincing evidence of paternity).

of her deceased husband held by the Allegheny County Coroner for testing, to be just and proper.

Order affirmed.