598 A.2d 65

## ESTATE OF Mary C. PEW, Deceased.

## Appeal of Grace Fleming PAYNE, Appellant.

Superior Court of Pennsylvania.

Argued May 15, 1991.

Decided Oct. 1, 1991.

---

418

420

Avivah R.Z. Pinski, Philadelphia, for appellant.

Nina M. Gussack, Philadelphia, for Pew, participating party.

Before McEWEN, KELLY and FORD ELLIOTT, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether the trial court properly permitted the trustees of the Trust Under Deed of Mary C. Pew, Sur Trust for Walter C. Pew to rely upon the blood type information contained in a certified copy of the decedent's, Walter C. Pew's, hospital records for a blood transfusion he received in 1987 and the blood type information supplied by the appellant, Grace Fleming Payne, during discovery when making a non-paternity determination, where it has not been alleged that there

are any existing samples of the decedent's blood available for blood type testing. We affirm.

The relevant facts and procedural history are as follows. The appellant was born out of wedlock in Cumberland, Maryland on November 12, 1926. The appellant's birth certificate states that her mother's name was Viola Humbertson and her father's name was Chuck Pew. The appellant attempted for forty-three years to locate her biological father. Her search led her to the decedent, Walter C. Pew, of Bryn Mawr, Pennsylvania. When the appellant attempted to contact Mr. Pew with her belief that he was her biological father, she was informed that Mr. Pew had died several months earlier on March 14, 1989. The appellant demanded a share of the principal of the trust which became distributable upon Walter C. Pew's death to the decedent's children. The trustees and the appellant's counsel agreed to an exchange of basic blood type information in order to expedite a determination of whether the appellant was the daughter of Walter C. Pew.

The appellant supplied a letter from her physician stating that her blood type was AB and a hospital laboratory report stating that the appellant's mother, Viola Humbertson Raney, had blood type B. The trustees submitted that Water C. Pew had blood type O, on the basis of his United States Army dog tag from the Second World War and certified 1987 blood transfusion records from Bryn Mawr Hospital. The trustees then informed the appellant that it was their position that she was not the daughter of Walter C. Pew. The trustees also retained a genetics expert, Dr. Laird G. Jackson, who issued a report which stated that on the basis of the different blood types he was 99.9% certain that the appellant was not the daughter of Walter C. Pew. A copy of this report was sent to the appellant. The appellant was then informed by the attorney for Mr. Pew's estate that there would be an audit of the "Trust under Deed of Mary C. Pew, Sur Trust for the benefit of Water C. Pew on May 7, 1990."

On May 3, 1990, the appellant, proceeding *pro se,* filed a claim on the audit of the trust in the Orphans' Court of Montgomery County. On July 11, 1990, the trial court issued a decree to allow the trustees to proceed with discovery. The appellant promptly responded to the trustees' interrogatories and request for the production of documents. On August 1, 1990, the trial court issued a decree permitting the appellant to conduct discovery. On August 6, 1990, the trustees filed a motion for summary judgment or in the alternative a petition for determination of nonpaternity pursuant to Pennsylvania's Uniform Act on Blood Test to Determine Paternity, 42 Pa.C.S.A. § 6131 *et seq.* On August 8, 1990, the trial court issued an order which suspended all discovery and scheduled a hearing on the trustees' motion for August 20, 1990.

At the hearing, the trustees presented the testimony of Dr. Laird Jackson, a geneticist, who was qualified by the trial court as an expert. Dr. Jackson testified that on basis of the appellant's blood type (AB), her mother's blood type (B) and Walter C. Pew's blood type (O), that it was impossible for Walter C. Pew to have been the appellant's father. The appellant did not present an expert of her own to refute Dr. Jackson's testimony. Rather, she rested upon her cross-examination of the trustees' expert. On August 27, 1990, the trial court entered a final decree which determined that Walter C. Pew was not the appellant's father, granted summary judgment in favor of the trustees and dismissed the appellant's claim with prejudice. This timely appeal followed.

On appeal, appellant raises four issues for our review.

I. DID THE HEARING COURT ERR WHEN IT DESIGNATED SOMEONE WHO WAS NOT AN EXPERT IN PATERNITY BLOOD TESTING AS AN EXPERT UNDER THE UNIFORM ACT FOR BLOOD TESTING TO DETERMINE PATERNITY?

II. DID THE HEARING COURT DENY LITIGANT HER RIGHT TO DUE PROCESS UNDER THE UNIFORM ACT WHEN THERE WAS NO IN-

COURT OPPORTUNITY TO CROSS-EXAMINE ANY OF THE PERSONS WHO DID ANY OF THE BLOOD TYPING, OR WHO WERE RESPONSIBLE FOR ANY OF THE ALLEGED BLOOD TYPE RECORDS WHICH CONSTITUTED THE FACTUAL BASIS FOR THE SCIENTIFIC OPINION CREDITED BY THE COURT AS THE DETERMINATIVE FACTOR IN ITS FINDING OF NON-PATERNITY UNDER THE UNIFORM ACT?

III. DID THE HEARING COURT ERR WHEN IT BASED ITS FINDINGS OF NON-PATERNITY SOLELY ON THE OPINION OF A MEDICAL WITNESS WHO RENDERED AN OPINION WITHOUT THE TYPE OF RECORDS WHICH A BLOOD TESTING EXPERT RELIES UPON FOR A DETERMINATION OF EXCLUSION OF PARENTAGE?

IV. DID THE HEARING COURT ERR BY DISMISSING THE CASE, WHEN, CONSIDERING THE RECORD IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY, THERE WERE ISSUES OF MATERIAL FACT?

Appellant's Brief at 3.

At the outset, we note that in reviewing orders granting summary judgment, our scope of review is limited. This Court has previously summarized the appropriate standard as follows:

A motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the non-moving party. Moreover, it is clear that to survive a motion for summary judgment, the non-moving party may not rely merely upon the controverted allegations of the plead-

ings, but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists.

*Larkin v. Metz,* 398 Pa.Super. 235, 238–39, 580 A.2d 1150, 1152 (1990); *Hartford Mutual Insurance Company v. Moorhead,* 396 Pa.Super. 234, 237, 578 A.2d 492, 494 (1990) (citations omitted); Pa.R.C.P. 1035(d). Cognizant of this standard, we turn our attention to the appellant's appeal.

The appellant contends that the trial court erred in designating Dr. Jackson as an expert under 42 Pa.C.S.A. § 6134. The appellant argues that while Dr. Jackson may be a qualified as a geneticist, he is not qualified as an expert in the examination of blood types as required by the act. Thus, the trial court erred in permitting Dr. Jackson to testify as an expert. We disagree.

 The admission of expert testimony is a matter for the discretion of the trial court and will not be remanded, overruled, or disturbed unless there was a clear abuse of discretion. *Mitchell v. Randall,* 368 Pa.Super. 421, 426–27, 534 A.2d 508, 510 (1987). The purpose for the selection of experts under 42 Pa.C.S.A. § 6134 is the same as the rule for expert testimony; to allow qualified "opinion" testimony in order to explain to the trier a subject matter which is beyond the experience and comprehension of the ordinary laymen. *Tyler v. King,* 344 Pa.Super. 78, 496 A.2d 16 (1985). Experts in one area of medicine may be found to be qualified to address other areas of specialization where the specialities overlap in practice or where the specialist has had experience in a selected field of medicine. *Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 559 A.2d 550 (1989), *appeal denied,* 527 Pa. 635, 592 A.2d 1302 (1991).

 Instantly, when Dr. Jackson presented his impressive credentials to the trial court, he stated that he was familiar with the process by which blood typing was done and through his work was personally familiar with and experienced in the analysis of blood types to determine

inheritable traits. As the information on the blood types of the appellant, her deceased mother and Walter C. Pew were supplied to him by either the appellant or the trustees, it was not necessary for Dr. Jackson to conduct blood tests to arrive at his conclusion. Moreover, it has not been alleged by the appellant that there are existing blood samples of either Walter C. Pew or the appellant's mother which would permit Dr. Jackson or any other expert to conduct blood typing tests. Accordingly, because Dr. Jackson was qualified as an expert in a closely related field dealing with heredity and inheritable traits, the trial court properly permitted his expert testimony to the question of whether the appellant was the daughter of Walter C. Pew.

■ The appellant's second contention is that she was denied her due process rights under 42 Pa.C.S.A. § 6131 *et seq.* because she did not have the opportunity to cross-examine the people who had completed the blood typing tests on herself, her mother and Walter C. Pew, upon which Dr. Jackson had relied. The appellant asserts that because of her inability to cross-examine the people who had made the respective blood type determinations, the trial court's ruling on non-paternity should be overruled, the grant of summary judgment in favor of the trustees should be vacated, and the case should be remanded to permit the appellant to fully cross-examine all these responsible for the blood typing determinations. We disagree.

While the general rule is that an expert may not state a conclusion which is based upon evidence not in the record, Pennsylvania recognizes an exception which permits medical witnesses to express opinion testimony on medical matters based, in part, upon the reports of others which are not in evidence, but which the expert customarily relies upon in practice. *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971); *Cooper v. Burns,* 376 Pa.Super. 276, 286–87, 545 A.2d 935, 940 (1988), *appeal denied,* 522 Pa. 619, 563 A.2d 888 (1989). Certified copies of medical records of any health care facility licensed under the laws of this Commonwealth that are susceptible to photostatic

reproduction may be proved as to foundation, identity and authenticity without any preliminary testimony provided. The copies are certified by the custodian of the originals. *See* 42 Pa.C.S.A. § 6151; 42 Pa.C.S.A. § 6152(d).

■ Instantly, the trustees' expert, Dr. Jackson, relied upon certified copies of Bryn Mawr Hospital records containing Walter C. Pew's blood type. The records used by Dr. Jackson were records which a medical expert would customarily rely upon in practice. Accordingly, as the appellant was permitted to fully cross-examine Dr. Jackson, we find no merit to her contention that she was not afforded her due process right to cross-examination under 42 Pa.C.S.A. § 6131 *et seq.*

■ Moreover, we find the appellant's argument regarding the trial court's failure to permit her to cross-examine those responsible for typing her blood and her mother's blood wholly specious. The information regarding the testing of her own blood type and her mother's blood type were under her own control. Any alleged errors in the blood typing could have been brought out if the appellant called the doctor responsible for testing her blood on January 30, 1990 or seeking a certified copy of her mother's hospital records from the Allegheny Hospital in Cumberland, Maryland. As the appellant pursued neither of these avenues, the trial court properly relied upon the information regarding the respective blood types of the appellant and her mother that the appellant had supplied to the trustees. *See Tops Apparel Manufacturing Company v. Rothman*, 430 Pa. 583, 244 A.2d 436 (1968) (admissions made in pleadings, stipulations and the like are usually termed "judicial admissions" and as such, cannot be later contradicted by the party who has made them).

The appellant's third contention is that the trial court erred in making a non-paternity finding based solely on the blood type records provided. The appellant contends that the records used were antiquated and inadequate. Thus, the trial court's determination of non-paternity based on

these records was premature and the case should be remanded for a full hearing with a full opportunity for discovery and to develop testimony on all of the records used for making a determination of paternity.

 Claims of paternity made after the lips of the alleged father have been sealed by death must be subjected to the closest scrutiny and can be allowed only on strict proof so that injustice will not be done. *Estate of Hoffman,* 320 Pa.Super. 113, 466 A.2d 1087 (1983). In order for a child born out of wedlock to establish a right to participate in the distribution of the remainder of a trust to be distributed to the children of the deceased father, the claimant must establish by clear and convincing evidence that she is in fact the daughter of the decedent. 20 Pa.C.S.A. § 2107(c)(3). If a blood sample of the deceased putative father is available for testing, which might conclusively eliminate him as father or be used as some evidence of paternity, it is a relevant factor which should not be withheld from testing in order to facilitate the resolution on the issue of paternity since that form of proof does not compromise any state interests. *Estate of Greenwood,* 402 Pa.Super. 536, 587 A.2d 749 (1991). However, where a blood sample of the deceased putative father is not available, documentary evidence regarding the decedent's blood type may be submitted. *See Estate of Greenwood, supra,* 587 A.2d at 757; *Estate of Hoffman, supra,* 466 A.2d at 1090; *Estate of Blumreich,* 84 Wis.2d 545, 560, 267 N.W.2d 870, 877 (1978). ABO blood tests are recognized in Pennsylvania as sufficient to independently prove non-paternity. *Commonwealth v. Gromo,* 190 Pa.Super. 519, 154 A.2d 417 (1959); *Commonwealth v. Coyle,* 190 Pa.Super. 509, 154 A.2d 412 (1959).

 In the instant case, one of major problems an estate may have in defending against a paternity claim, that information concerning the decedent's blood which might conclusively eliminate him as the father may not be available, has been averted. The certified records from Bryn Mawr Hospital regarding Walter C. Pew's blood type came

as a result of a blood transfusion he received on October 12, 1987. These certified records, which were neither antiquated nor insufficient, clearly established that Walter C. Pew had type O blood. The appellant's own admission established that she had type AB blood. Accordingly, the ABO test used by the trial court was dispositive as a person with type O blood cannot be the father of a child with AB type blood because the type O blood putative father has neither an A or B antigen to pass on to his alleged offspring. *See Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (blood grouping test demonstrates non-paternity when putative father belongs to group O and child belongs to group AB).

In her final issue, the appellant contends that the trial court erred in entering summary judgment in favor of the trustees when there were still unresolved issues of material fact regarding various blood types of all of the involved parties. The appellant argues that as the trial court improperly relied upon faulty blood typing information the granting of summary judgment in the trustees' favor was premature and discovery should have been permitted to proceed. We disagree.

As stated earlier, in order to survive a motion for summary judgment, the non-moving party may not rely merely upon the controverted allegations of the pleadings, but must set forth specific facts by way of affidavit, or some other way as provided by Pa.R.C.P. 1035(d), demonstrating that a genuine issue exists. *Larkin v. Metz, supra.* Summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact; however, an exception occurs where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witnesses. *Garcia v. Savage,* 402 Pa.Super. 324, 586 A.2d 1375 (1991).

Instantly, the appellant offered no evidence which would refute the fact that Walter C. Pew had type O blood, she

merely made unsupported assertions concerning the problems of blood typing and inapplicable rare exceptions to the rules of blood typing. The appellant has not alleged that a sample of the decedent's blood is available for testing to refute the certified hospital records stating that Walter C. Pew had type O blood. As the trustees relied not only upon the official records concerning Walter C. Pew's blood type, but also upon the appellant's own admissions regarding her own and her mother's blood types to prove that Walter C. Pew was not the appellant's father, the trial court properly granted summary judgment in favor of the trustees.

Based upon the foregoing, the final decree determining non-paternity, granting summary judgment in favor of the trustees and dismissing the appellant's claim with prejudice is affirmed.

Decree AFFIRMED.