# Martinez v. Uckele.

*Jennifer R. Sletvold,* for plaintiff.
*Gary A. Brienza* and *James A. Swetz,* for defendant.

WILLIAMSON, *J.,* January 8, 2013—Jacqueline Martinez (hereafter "plaintiff"), as administratrix of the estate of Justin B. Uckele (hereafter "decedent"), and as mother and legal guardian of Justin B. Uckele Jr., a minor, initiated this action by filing a complaint on May 9, 2011. Plaintiff's complaint alleges that the decedent died as a result of the unlawful actions of Bernard J. Uckele and Concetta Uckele (hereafter "defendants"). Specifically, plaintiff's complaint alleges that decedent died on June 21, 2009 after being fatally shot by his father, defendant Bernard J. Uckele.[1] Plaintiff also alleges that she and the decedent had plans to marry, and at the time of decedent's death, plaintiff was pregnant with Justin B. Uckele Jr. ("minor child"). Plaintiff alleges the decedent was the father of Justin B. Uckele, Jr. Plaintiff alleges causes of action

---

1. Bernard J. Uckele was found guilty of involuntary manslaughter on 9/17/10.

for wrongful death and survival against defendants.

Defendants filed an answer and new matter on November 4, 2011. In their answer and new matter, defendants assert that the paternity of the minor, Justin B. Uckele Jr., is unknown to them. Accordingly, on August 23, 2012, plaintiff filed the instant petition pursuant to 23 Pa. C.S.A. §5104 to conduct deoxyribonucleic acid ("DNA") tests on defendants in order to establish if there is a blood relationship between defendants and the minor, Justin B. Uckele Jr., their purported grandchild. Plaintiff contends that DNA testing is necessary to pursue the wrongful death and survival action in favor of the minor child.

On September 11, 2012, this court issued a rule returnable upon defendants to show cause why the petition should not be granted. On September 21, 2012, defendants filed their answer to petition and new matter. On October 4, 2012, plaintiff filed an answer to new matter of defendants. Plaintiff filed a brief in support of petition on October 15, 2012. Plaintiff filed a praecipe for argument on October 19, 2012. Defendants filed a brief contra plaintiff's petition on November 19, 2012. Arguments were heard on December 3, 2012. Plaintiff filed a supplemental brief on December 10, 2012. Defendants filed a supplemental brief on December 12, 2012. We are now ready to dispose of this matter.

## DISCUSSION

Plaintiff has petitioned this court pursuant to 23 Pa.

C.S.A. §5104 (uniform act on blood tests to determine paternity) to order defendants to submit to a blood test in order to determine the paternity of Justin B. Uckele Jr. The uniform act states, in part, as follows:

"(b) Scope of section.—

(1) Civil matters.—This section shall apply to all civil matters.

\*\*\*

(c) Authority for test.—In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parcentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require."

23 Pa. C.S.A. §5104

It is clear from reading the statute that this section applies to all civil matters, and therefore applies to this wrongful death and survival action. It is also clear that the determination of whether or not decedent is the father of Justin B. Uckele Jr. is a material fact in a wrongful death

and survival action brought by the representative of Justin B. Uckele Jr., because if the decedent is not Justin B. Uckele Jr.'s father, Justin Jr. would not be able to recover under a wrongful death and survival action.

Less clear is whether the statute permits this court to order the defendants, putative grandparents, to submit to blood tests to determine if their deceased son is the father of Justin B. Uckele Jr. It appears to this court that this case is a matter of first impression within the commonwealth. The statute states that the court may order the mother, child, and alleged father to submit to blood tests. 23 Pa. C.S.A. §5104 (c). However, the next sentence in the statute reads "[i]f *any party* refuses to submit to the tests…" 23 Pa. C.S.A. §5104 (emphasis added). That sentence could be read to mean that if any party in a proceeding refuses, in addition to mother, child, and alleged father, a court could order relief. The statute does not state that *only* the mother, child, and alleged father may be ordered to submit to blood tests. Additionally, the statute does not specifically exclude putative grandparents from blood testing.

We find it difficult to believe that the legislature, in drafting the Uniform Act, had this current scenario in mind. In this case, the defendant Bernard Uckele, father of the decedent, was the cause of decedent's death. At oral argument in this matter, we asked the parties if the decedent's body was available to be exhumed in order to have DNA tests done on his blood or tissues. In a letter to the court dated December 11, 2012, plaintiff's counsel informed the

court that plaintiff believes the defendants had decedent's body cremated. The defendants did not respond. Not only was defendant Bernard Uckele responsible for decedent's death, the defendants also had the body cremated. Even if this act was unintentional, it is impossible for decedent's DNA to be tested in determining the paternity of Justin B. Uckele Jr. The only other way to confirm paternity is through DNA testing of the defendants.

As this particular circumstance has never been determined by Pennsylvania courts, we look to similar situations in other areas of commonwealth jurisprudence. Namely, Pennsylvania Rule of Evidence 804(b)(6) Hearsay Exception: Forfeiture by Wrongdoing. Pa.R.E. 804(b)(6) states, in relevant part:

> b) Hearsay exceptions. The following statements as hereinafter defined are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (6) *Forfeiture by wrongdoing.* A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

Pa. R.E. 804(b)(6).

In crafting this hearsay exception, it is clear that the intention is to deny someone from profiting favorably from a wrongdoing. Parties cannot hide behind a claim of hearsay when they themselves caused the inability for the

witness to testify.

Pennsylvania courts have used the forfeiture by wrongdoing exception to prohibit parties from excluding information from cases where that party's own actions are both hindering judicial economy, and furthering that party's own interests. *See Commonwealth v. King*, 949 A.2d 405 (Pa.Super. 2008) (where victim's prior statements to officer about defendant's illegal activities were admissible under forfeiture by wrongdoing exception to hearsay rule, where evidence indicated that defendant shot victim to render him unavailable to testify against defendant in connection with his illegal arms purchases).

Under the Slayer's Act, a person who causes the death of the decedent cannot inherit or acquire any property or benefit as a result of the death of the decedent. 20 Pa. C.S.A. §8802. Again, the intention is that no one who causes a death should benefit from that death, even if otherwise legally able to do so. The analogy that we are making (and it is by no means a perfect analogy) from these exceptions to the rule is that defendants, who have caused the death of a person, should not benefit from such death under the law. Likewise, defendants should not be allowed to dodge the issue of paternity under the argument that the Uniform Act only allows the mother, child, and alleged father to be ordered to submit to blood testing. To do so would be to allow the defendant Bernard Uckele to hide behind his wrongful act that otherwise prevented the ability of the decedent to be available. In this case,

but for the actions of defendant Bernard Uckele in killing the decedent, and the defendants cremating the decedent's remains, the decedent's blood and tissue would be able to be used for paternity testing. Furthermore, even if the decedent's body was available for testing, it would be an unreasonable burden and expense to obtain his DNA, when the defendants in the case can supply the necessary testing.

Defendants cite a California court's interpretation of a similar statute as persuasive evidence for this court to deny plaintiff's petition. *William M. v. Superior Court*, 225 Cal. App. 3d 447 (Ct.App. 1990). In *William M.*, the California court's interpretation of the evidence code section 892[2], was that the code did not authorize the court to order the putative paternal grandparents to submit to blood tests. There are several differences between the California case and the present situation. First, *William M.*, was a paternity case. This is a wrongful death and survival action. Second, the putative paternal grandparents in *William M.* were not responsible for decedent's death, nor were they responsible for the destruction of decedent's blood and tissue to prevent the testing for paternity. Third, the grandparents in *William M.* were not the named defendants and parties

---

2. "In a civil action *in which paternity is a relevant fact*, the court may upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, and shall upon motion of any party to the action made at a time so as not to delay the proceedings unduly, order the *mother, child, and alleged father* to submit to blood tests...." *William M.* at 450. (Italics added.) Repealed by Stats.1992,c. 162 (A.B.2650), §9, operative Jan. 1, 1994.

to the suit as they are here. Therefore, we do not find the California case persuasive in this instance.

Finally, the interests of justice and judicial economy support granting plaintiff's petition. Defendants argue that plaintiff has another option by proving paternity by clear and convincing evidence pursuant to 20 Pa.C.S.A. §2107(c)(3). Such a standard may very well require blood tests anyway in order to confirm paternity. *See In Re Estate of Greenwood*, 402 Pa. Super. 536, 587 A.2d 749 (1991) (dealing with issue of time limitation in action seeking test of father's blood samples to prove heirship in probate proceeding). In any event, section 5104 states, "[i]f any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or indentity of a child against the party or enforce its order if the rights of others and the interests of justice so require." 23 Pa. C.S.A. §5104. Defendants have refused to submit to blood tests. They are defendants in this case where the issue of paternity is a central issue and in which they seek to hide behind their son's death, caused by his own father who is also a defendant in this case. Regardless of however else plaintiffs may be able to prove paternity, there is a statutorily prescribed method available for the court's use in determining paternity in this case. Therefore, this court finds that the interests of justice and judicial economy support ordering defendants to submit to blood testing.

After reviewing 23 Pa. C.S.A. §5104, and the unique circumstances of the present case, we find that this statute

and other similar commonwealth jurisprudence, public policy, and fairness, demand that defendants submit to a blood test to determine the paternity of Justin B. Uckele Jr.

## ORDER

And now, January 8, 2013, after reviewing plaintiff, Jacqueline Martinez's, petition for genetic testing, it is hereby ordered that defendants, Bernard J. Uckele and Concetta Uckele, submit to blood testing to determine the paternity of Justin B. Uckele Jr., a minor, within 30 (thirty) days of the date of this order.