525 A.2d 1242

**Laurel NICHOLS**

v.

**Richard HORN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 20, 1987.

Filed May 12, 1987.

the amount of $1,860.58. *See Brenna,* 294 Pa.Super. 564, 440 A.2d 609 (1982).

Marc S. Drier, Pittsburgh, for appellant.

Dudley N. Anderson, Williamsport, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

On May 14, 1979, a child was born to appellee, Laurel Nichols. She instituted an action for support on September 19, 1985 alleging appellant, Richard Horn, was the father of the child. Appellant filed an answer and new matter raising the statute of limitations as an affirmative defense and on January 24, 1986, moved for summary judgment. Appellee, on January 28, 1986, filed a praecipe to discontinue and the court, by Order dated January 29, 1986, dismissed the petition without prejudice. Appellee then filed a new petition on January 30, 1986. Appellant filed a motion to strike the discontinuance pursuant to Pa.R.C.P. 229(c). The court, by Order, denied the motion and this appeal followed.

The particular circumstance which prompted appellee's action was the expansion of the statute of limitations for paternity actions from six to eighteen years. The statute in effect at the time appellee filed her original action was 42 Pa.C.S.A. § 6704(e) which provided:

(e) **Limitation of actions.**—All actions to establish the paternity of a child born out of wedlock brought under

this section must be commenced within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father.

23 Pa.C.S.A. Chapter 43 was enacted by Act 1985, October 30, P.L. 264, No. 66, § 1. This repealed the statute of limitations established under 42 Pa.C.S.A. § 6704(e) and provided for an expanded limitations period. The statute became effective on January 28, 1986 and provided in pertinent part:

**23 Pa.C.S.A. § 4343. Paternity**

**(b) Limitation of actions.**—An action or proceeding under this chapter to establish the paternity of a child born out of wedlock must be commenced within 18 years of the date of birth of the child.

The court, in denying appellant's motion to strike the discontinuance, *reasoned that the new statute of limitations should apply to all cases not finally decided on its effective date.* In so holding, the court rejected appellant's argument that application of the eighteen year statute of limitations deprives him of a remedy he would have under the prior statute. The court concluded that a remedy refers to a right of recovery and not to a defense and also noted that public policy in paternity actions supports allowing the action to go forward rather than be terminated by a procedural rule.

■ On appeal, appellant maintains that the court abused its discretion in refusing to strike the discontinuance. He asserts he is sufficiently prejudiced, by the resultant loss of the summary judgment he would have been entitled to under the six-year statute of limitation, to meet the requirements of Pa.R.C.P. 229(c).

We agree with appellant that the court acted improperly in refusing to strike the discontinuance.

Pa.R.C.P. 229(c) provides:

(c) The court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice.

We think prejudice has been shown where, as here, a motion for summary judgment has been filed and the party seeking to strike the discontinuance would be entitled to summary judgment if the discontinuance was not allowed. Under these circumstances, the court abused its discretion in refusing to find prejudice. *See Innovate Inc. v. United Parcel Service,* 275 Pa.Super. 276, 418 A.2d 720 (1980).

We also find support for our holding in the recently filed decision of the Superior Court en banc in *Paulussen v. Herion,* 359 Pa.Super. 520, 519 A.2d 473 (1986) (Concurring Opinion, Brosky, J.; Concurring Opinion, Kelly, J.).

In *Paulussen,* a petition in paternity and child support was filed in February of 1980, nearly eight years after the birth of the child. The statute of limitations under 42 Pa.C.S.A. § 6704(e) was raised as an affirmative defense and a motion for summary judgment filed.

Summary judgment was granted and a subsequent challenge to the constitutionality of the statute was brought, ultimately reaching the United States Supreme Court. Before a ruling was made, the limitations period was expanded by enactment of 23 Pa.C.S.A. § 4343(b) and the Supreme Court remanded to this Court for a determination of the new statute's effect upon the old. (*Paulussen v. Herion,* 475 U.S. 557, 106 S.Ct. 1339, 89 L.Ed.2d 521 (1986)).[1]

■ Upon remand, this Court, relying on the decisions in *Williams v. Wolfe,* 297 Pa.Super. 270, 443 A.2d 831 (1982); *Commonwealth ex rel. Pugh v. Callahan,* 312 Pa.Super. 246, 458 A.2d 607 (1983) and *Hatfield v. Hazelbaker,* 306 Pa.Super. 555, 452 A.2d 863 (1982), held that "the statute in

1. The appellant filed a second action following the enactment of the new statute of limitations, but the court in *Paulussen* held that matter not to be before it as no adjudication had been made below.

force when the complaint is filed is controlling as to timeliness," *Paulussen, supra,* and affirmed the summary judgment. Also in *Clark v. Jeter,* 358 Pa.Super. 550, 518 A.2d 276 (1986), we have held that if the action would have been barred under the old statute of limitations (six years), new life cannot be breathed into the barred action retroactively, by enactment of a new longer statute of limitations (eighteen years). Thus, in this action, the matter was barred by the six-year statute of limitations and discontinuance of the present action and reinsituting the action under the eighteen-year statute (if ultimately approved) would be of no avail. *Also see Grassmyer v. Coleman,* 345 Pa.Super. 358, 498 A.2d 441 (1985) where we thoroughly reviewed the history of statutes of limitations as they relate to paternity actions.

Finally, we think to refuse to strike a discontinuance in situations such as this would enable a party who had instituted an action, when confronted with a successful affirmative defense, to terminate the action without allowing the defendant to end any future litigation of the matter by having a final judgment entered. It is conceivable that the party seeking to discontinue could then wait, hoping that the legislature would, at some time in the future, expand the statute of limitations and then institute another action. We do not think this is desirable as it prevents finality and continually exposes the defendant to potential litigation. Statutes of limitation are designed to alleviate such a circumstance, and to prevent application of a statute by allowing a discontinuance would frustrate the purpose of the statute.

Implicit in our decision is the determination that the public policy argument put forth by the lower court does not rise to such a level as to overcome our objections to allowing the discontinuance to stand. Although the interests of the child are important, we agree with the court in *Paulussen,* where it stated:

> ... there is no persuasive theory available to justify the application of a statute of limitations effective in 1986, to an action commenced in 1980. The court in *Astemborski,*

*supra* [2] declined to address the wisdom of a legislative scheme which "prevented forever [a child] from asserting a successful claim for support." *Id.*, 502 Pa. at 417–18, 466 A.2d at 1022, simply because its mother neglected to protect its rights. We are in much the same position. *Paulussen*, 359 Pa.Superior Ct. at 524, 519 A.2d at 475.

The public policy considerations in matters such as these cut several ways. Unquestionably, the state has an important interest in encouraging, if not compelling, mothers to pursue support actions for children born out of wedlock. The burden of support of such children weighs heavily on soceity and the father, if possible, should be made to assume at least some part of that burden. The mother has the responsibility, with the father to maintain the child and in the majority of the cases, she assumes the burden of disproportionately or is forced to turn to the state for assistance. Finally, and perhaps above all, the child has a right to be maintained and supported by both parents. In a world that is at best hostile and overwhelming to the child born out of wedlock from the social, cultural and psychological aspects, at least in the economic, there should be relief. Recognizing these considerations, the United States Supreme Court, in *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed. 770 (1982), has held that a one-year statute of limitations is inadequate to protect these interests in striking down the Texas statute and held soon thereafter, in *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed. 372 (1983), that a two-year statute was no better.

The prejudice and injustice inflicted upon the child born out of wedlock has been substantially stripped away in recent years. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) which held that a putative father has a constitutionally protected right to participate in the support, maintenance and upbringing of his minor child; *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) where the statutory classi-

---

**2.** *Astemborski v. Susmarski*, 502 Pa. 409, 466 A.2d 1018 (1983). In *Astemborski*, the Pennsylvania Supreme Court upheld the constitutionality of 42 Pa.C.S.A. § 6704(e).

fication (illegitimacy) imposes a civil disability, and there is no legitimate state interest involved, the Equal Protection Clause requies it be struck down; *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) state may not grant a judicially enforceable right to support of children by their natural father and at the same time deny it to illegitimate children; *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) held that a state could not limit intestate inheritance of a child born out of wedlock to cases where the father *acknowledged* paternity, however, *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) provides that paternity must have been established before the father's death to permit intestate inheritance because of important state interests.

■ Due process requires that to the degree possible, children born out of wedlock be given treatment equal to that of children born during marriage. Having said that, other considerations that have a substantial bearing on the rights of the father and perhaps on his family stability must be weighed. It is not infrequently the case that the mother of the out of wedlock child wants nothing to do with the father and wishes not to be involved with correlary rights of visitation, partial custody and a legal say in the child's upbringing. If she marries, that contact could have a deleterious affect on that relationship and undermine a sound relationship, perhaps even adoptive possibilities with the stepfather. The putative father has the right, after a reasonable period of time has passed without a claim of paternity against him, to the expectation that commitments to family are not going to be unsettled by unforeseen and unanticipated financial burdens. The harm to the father's family could well exceed the benefit to the child after 8, 10 or 15 years. *See Grassmeyer, supra.* The man who sires children during marriage has committed himself to their rearing. Only by tortured logic can we compel the same result, without the commitment, on the putative father. The unfortunate consequences of this timeless problem cannot be eliminated entirely by legislation and equal protection rulings by the courts.

Formerly, an important consideration that mitigated against an extended window of legal susceptability, was the difficulty of proof as time passed. This has been considerably reduced with the advent of sophisticated blood and tissue matching procedures such as the Homologous Lucocyte Antigen test. In the foreseeable future, it is likely that techniques will be capable of establishing, with certainty, the identity of the father instead of indicating the probability of paternity or exclusion of a man as the child's father. Thus the matter of proof is less a consideration than the need to have finality as to liability and reasonable expectation that a life and lives will not be badly disrupted after a certain time.

In light of the discussion set forth above, the Order denying appellant's motion to strike the discontinuance is reversed. The motion is granted and the court directed to rule on the motion for summary judgment.

WIEAND, J. concurs in the result.