652 A.2d 843

Danielle WAWRYKOW, Parent and Guardian
of David John Simonich, III, Appellant,

v.

David John SIMONICH, Sr., Administrator of the
Estate of David John Simonich, Jr., Deceased,
and Nancy Simonich, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 4, 1994.

Filed Dec. 29, 1994.

Robert A. Lebovitz, Pittsburgh, for appellant.

James J. Ross, Ambridge, for appellees.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from the March 16, 1994, order of the Court of Common Pleas of Beaver County, Orphans' Court Division, denying a motion for exhumation and deoxyribonucleic acid (DNA) testing of the body of David John Simonich, Jr. (hereinafter "Simonich, Jr."), by the appellant, Danielle Wawrykow, parent and guardian of David John Simonich, III (hereinafter "Simonich, III"). We reverse.

The facts of record disclose that Simonich, Jr. died in a vehicular accident on February 7, 1991, following which suit was instituted against the Pennsylvania Department of Transportation and a local tavern by Simonich, Sr., administrator of the decedent's estate, to recover for the death of his son.

On November 19, 1992, the appellant filed a claim against the decedent's estate on behalf of Simonich, III, for its refusal to acknowledge the appellant's child as that of the decedent. In support thereof, the appellant prepared a legal memorandum asserting that she was the mother of the minor-child (born July 15, 1991) and that the child was conceived at a time when the decedent was the only person with whom she had sexual relations.

After delivery, the appellant listed the decedent on the certificate of birth as the father. Also, in the memorandum, the appellant averred that the 2½-year-old child's appearance resembled closely that of the decedent. As a result, in furtherance of establishing paternity, the appellant sought DNA blood grouping samples from the decedent or his parents, she "be[ing] advised by Roche Biomedical Laboratories, Inc. that the blood groupings of the parties [1] [we]re not inconsistent with paternity and that genetic testing based on blood samples obtained from the paternal grandparents, since

1. The appellee had provided the decedent's blood type to the appellant, but Roche Biomedical Laboratories, Inc. was unable to make a determination on paternity from the blood types alone of the appellant, the minor-child and the decedent. See Appellant's Brief and Reproduced Record at 73a.

the decedent [wa]s buried would be sufficient to verify [the] paternity of the deceased. In the alternative, [urged the appellant,] the DNA testing c[ould] be taken from the deceased in an unobtrusive manner to establish paternity." See Record No. 4 at 3.

In reply, the appellee contended that neither by statute nor case law could the decedent's parents be required to submit to blood testing. The court agreed and denied such a request by order dated December 17, 1993. An identical result followed with the court's order of March 16, 1994, denying the appellant's request to exhume the decedent's body for DNA testing to establish paternity. The present appeal was perfected from the latter (March 16th) order and raises nine (9) issues which, when distilled, question the propriety of the court's order denying exhumation and blood testing of the decedent for purposes of proving parentage.

All parties, including the court, agree that the question posed is one of first impression in this jurisdiction. Nonetheless, we find guidance from this Court's recent pronouncement in *In re Estate of Greenwood,* 402 Pa.Super. 536, 587 A.2d 749 (1991), *appeal denied,* 529 Pa. 634, 600 A.2d 953 (1991), concerning the rights of children born out of wedlock to establish paternity for inheritance purposes from one who has died prior to the posthumous-proving proceeding is instituted. As is herein germane, we wrote:

> ... the "right to inherit" in the case of intestacy is reserved exclusively to Chapter 21 of the Probate, Estates and Fiduciaries Code, as amended 1978.... Within the ambit of the Act of 1978, ... a person born out of wedlock is not foreclosed from proving parentage, by clear and convincing evidence, *after* the person claimed to be the father dies.[3]

$$* \quad * \quad * \quad * \quad * \quad *$$

It is beyond peradventure that proof problems have always been in the forefront of counseling against condoning an illegitimate's claim of paternal inheritance. This is an area with which the States have an interest of considerable magnitude. *Trimble, [v. Gordon ]* supra, 430 U.S. [762] at

771, 97 S.Ct. [1459] at 1465 [52 L.Ed.2d 31 (1977) ]; *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 170, 92 S.Ct. 1400, 1404, 31 L.Ed.2d 768 (1972); *Labine v. Vincent,* 401 U.S. 532, 538, 91 S.Ct. 1017, 1020, 28 L.Ed.2d 288 (1971).

The interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved. Establishing maternity is seldom difficult. As one New York Surrogate's Court has observed: "[T]he birth of the child is a recorded or registered event usually taking place in the presence of others. In most cases the child remains with the mother and for a time is necessarily reared by her. That the child is the child of a particular woman is rarely difficult to prove." *In re Ortiz,* 60 Misc.2d 756, 761, 303 N.Y.S.2d 806, 812 (1969). Proof of paternity, by contrast, frequently is difficult when the father is not part of a formal family unit. "The putative father often goes his way unconscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know *who* is responsible for her pregnancy." *Ibid.* (emphasis in original); accord, *In re Flemm,* 85 Misc.2d 855, 861, 381 N.Y.S.2d 573, 576–577 (Surr.Ct.1975); *In re Hendrix,* 68 Misc.2d [439] at 443, 326 N.Y.S.2d [646] at 650 [ (Surr.Ct.1971) ]; cf. *Trimble,* supra, 430 U.S., at 770, 772, 97 S.Ct., at 1465, 1466. *Lalli v. Lalli,* 439 U.S. 259, 268–69, 99 S.Ct. 518, 525, 58 L.Ed.2d 503 (1978). However, albeit "the lurking problems with respect to proof of paternity ... are not to be lightly brushed aside ...," *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), " 'neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.' " *Trimble,* supra, 430 U.S. at 771, 97 S.Ct. at 1466.

We find that *Trimble* and its progeny were preoccupied with a "proof problem" that has been ameliorated by the advancements made in the medical field with regard to blood testing. See *Alexander v. Alexander,* 42 Ohio Misc.2d 30, 537 N.E.2d 1310 (Probate Court of Franklin Cty.,

Ohio, 1988). As our learned colleague Judge Tamilia observed in *Nichols v. Horn*, 363 Pa.Super. 301, 525 A.2d 1242 (1987), on this exact topic of a state limiting intestate inheritance to a child born out of wedlock:

> Formerly, an important consideration that mitigated against an extended window of legal susciptibility [*sic*], was the difficulty of proof as time passed. This has been consierably [*sic*] reduced with the advent of sophisticated blood and tissue matching procedures such as the Homologous Lucocyte [*sic*] Antigen test. In the foreseeable future, it is likely that techniques will be capable of establishing, with certainty, the identity of the father instead of indicating the probability of paternity or exclusion of a man as the child's father. Thus the matter of proof is less a consideration than the need to have finality as to liability and reasonable expectation that a life and lives will not be badly disrupted after a certain time.

363 Pa.Super. at 308, 525 A.2d at 1245. Additionally, our Supreme Court has acknowledged that Human Leucocyte Antigen [HLA] blood grouping tests establish, in the opinion of experts interpreting the results, as high as a 99.99 percent probability that the blood of the person tested was the biological father of the illegitimate offspring. *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986). And, as such, the HLA test, although not conclusive, may be introduced as "some evidence of paternity." *Id.* at 426, 515 A.2d at 529. Accord *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983).

\* \* \* \* \* \*

Initially, we observe that 42 Pa.C.S.A. § 6133 authorizes a court to order a "mother, child and alleged father to submit to blood tests" where, in "any matter subject to th[e] subchapter [known as Uniform Act on Blood Tests to Determine Paternity] in which paternity, parentage or the identity of a child is a relevant fact," the court can act *sua sponte* or at the initiation of a claimant to resolve the question left open. Relevancy is extant.

Secondly, public policy is in favor of eliminating the stigma of illegitimacy, and one of the means by which to do so is by HLA testing ordered by the court and the admission of the results as "some evidence of paternity." See *Turek*, supra; see also *Ptaszkiewicz Estate*, 5 Pa.Fid. Rptr.2d 208, 210 (O.C.Allegheny Cty., 1984).

\* \* \* \* \* \*

*Our reading of the statutes and case law indicates that where a decedent's blood sample is available for testing, which might conclusively eliminate him as the father or be used as some evidence of paternity, it is a "relevant" factor which should not be withheld from the testing mechanisms of today's medical procedures to facilitate a resolution on an issue of paternity since "th[e] form[ ] of proof . . . do[es] not compromise the State['s] interests." Trimble,* supra, 430 U.S. at 772 n. 14, 97 S.Ct. at 1466 n. 14.

3. *Paragraph (3) of Clause (c) of Section 2107 specifically reads that paternity may be proven by clear and convincing evidence, i.e., "that the man was the father of the child". (Emphasis added) The use of the term ("was") in the past tense (versus "is" the father of the child) discloses to this Court that the Legislature intended that paternity could be proven "after" the putative father's death. Contrast this scenario to Paragraphs (1) and (2) of Clause (c), which are written in such terms to imply that the events, more likely than not (but not in absolute terms) would transpire before the illegitimate's eighteenth birthday, or at least during his/her lifetime and that of the alleged parent(s).*

From our scrutiny of the statute in question, there is no indication in the Probate, Estates and Fiduciaries Code . . . that the Legislature intended to establish a barrier to an illegitimate's right to prove paternity beyond the purported father's lifetime so as to inherit by, from and through the decedent.

402 Pa.Super. at 543, 547–551 & n. 3, 587 A.2d at 752, 755–756 & n. 3 (Emphasis added in part; footnote omitted).

Consistent with the precepts enunciated in *Greenwood*, supra 402 Pa.Super. 536, 587 A.2d 749, we need to ascertain whether the decedent's blood/tissue sample is *available* for testing. It must be remembered that in *Greenwood* the coroner had retained blood and tissue samples of the decedent

due to a pending investigation into the cause of death. Instantly, no samples of Simonich, Jr.'s blood or tissue were preserved prior to burial. As a result, the appellant sought exhumation of the body, an exercise which could be granted provided "reasonable cause" is shown for it. Cf. *Novelli v. Carroll*, 278 Pa.Super. 141, 420 A.2d 469, 472 (1980) (reinternment requires reasonable cause to be established for its allowance).

> "The exhumation or autopsy of a corpse, when useful to ascertain facts in litigation, should of course be performed. Reverence for the memory of those who have departed does not require us to abdicate the high duty of doing justice to the living; and the orders of a court of justice, exercising the power of the state in the communal interest, are not to be placed on the same level with the acts of an unlicensed and self-seeking intruder upon hallowed ground." * * *
>
> "The exhumation of a corpse, often a material assistance in insurance or inheritance cases, is demandable on this principle, subject of course to the trial court's discretion as to necessity and propriety."

*Stastny v. Tachovsky*, 178 Neb. 109, 132 N.W.2d 317, 325 (1964) (citations omitted). Accord *Petition of Sheffield Farms Co.*, 22 N.J. 548, 126 A.2d 886, 891 (1956); *Kusky v. Laderbush*, 96 N.H. 286, 74 A.2d 546 (1950); *Stevens v. Ganz*, 49 Pa.D. & C.2d 283 (Lehigh Cty., 1970).

Instantly, in establishing cause (be it labelled "reasonable," "good," or "substantial"), see *Novelli*, supra 278 Pa.Super. 141, 420 A.2d 469; *Batcheldor v. Boyd*, 108 N.C.App. 275, 423 S.E.2d 810, 814 (1992); *Kusky*, supra 96 N.H. 286, 74 A.2d 540, for purposes of exhumation, we have of record the uncontested assertions of the appellant that: 1) throughout the period of conception, including prior thereto and during pregnancy, "the decedent was the only person with whom she had a sexual relationship"; 2) the decedent is the father of the child; 3) the decedent is listed as the father on the child's birth certificate; 4) the child's physical characteristics "resemble closely that of the decedent"; and 5) Roche Biomedical Laboratories, Inc. advised that "the blood groupings of the

parties [we]re not inconsistent with paternity".[2] See Appellant's Legal Memorandum, Record No. 3 at page 3. To supplement the preceding, the appellant also contended below that DNA testing of the decedent will "establish" paternity. *Id.;* see also *Zearfoss v. Frattaroli,* 435 Pa.Super. 565, 646 A.2d 1238 (1994), wherein the question of paternity was at issue merely with the plaintiff's allegations that she had sex with the defendant during the period of conception and, exclusively, for two years preceding birth. Also, the plaintiff had a positive DNA test pointing to the defendant as the father by a 99.99 percentile. In contrast, the defendant denied seeing the plaintiff during conception, documents were produced indicating that the plaintiff could not identify the child's father and that she cohabitated with other men during a period relevant to the resolution of paternity.

At bar, we find that the Orphans' Court should be the first to rule on whether the appellant has presented "reasonable cause" to believe that exhumation would be revealing on the issue of paternity.[3] See *Novelli,* supra 278 Pa.Super. 141, 420 A.2d 469; *Batcheldor,* supra 108 N.C.App. 275, 423 S.E.2d 810; *Stastny,* supra 178 Neb. 109, 132 N.W.2d 317; *Kusky,* supra 96 N.H. 286, 74 A.2d 546, and contrast with *Petition of Sheffield Farms Co.,* supra 22 N.J. 548, 126 A.2d 886. Inasmuch as the Orphans' Court's ruling was predicated upon the absence of statutory and case law authorizing exhumation to establish paternity for inheritance purposes, such a "reasonable cause" determination is wanting in this case. Moreover, when the appellant's proffered evidence is read in conjunction with the evidence sought (DNA testing), its value in aiding her case is not so conjectural and remote as to render it speculative and uncertain. See *Alexander v. Alexander,* 42 Ohio Misc.2d 30, 537 N.E.2d 1310, 1314 (1988); see also Concurring

**2.** The appellee's reply focused on the argument that neither case law nor statutes in this jurisdiction allowed the exhumation of the decedent for DNA purposes to resolve paternity for inheritance purposes.

No refutation is made with regard to the appellant's allegations of paternity in her Motion for Exhumation.

**3.** Evidence exists (e.g., appellant's testimony to having sex only with Simonich, Jr. during conception) which is best left in the first instance for the Orphans' Court, as the credibility-assessor, to weigh in satisfying "reasonable cause" for exhumation and "clear and convincing" evidence as to the establishment of paternity.

Opinion of Olszewski, J., in *Zearfoss, supra* 435 Pa.Super. 565, 646 A.2d 1238; Dissenting Opinion by Chief Justice West in *Matter of Erbe,* 457 N.W.2d 867, 872 (S.D.1990), and contrast with *Commonwealth v. Kivlin,* 267 Pa.Super. 270, 406 A.2d 799 (1979).

Albeit DNA test results "are but one of the fibers which go into making the pattern of evidence either proving or disproving paternity[,] and [even though] . . . it is within the province of the trier-of-fact to believe all, some or none of the evidence presented", *Zearfoss, supra,* 435 Pa.Super. at 575, 646 A.2d at 1243, that does not discount the relevancy/materiality of the evidence sought by one attempting to establish paternity via DNA testing. A party seeking DNA testing as a vehicle to supplement his/her arsenal of evidence to prove paternity should not be denied access to such potentially probative evidence, provided, as is the case here, the petitioner satisfies the "reasonable cause" criterion to warrant exhumation. This is to be decided on remand.

Despite the fact that neither party nor the court acted to bring the matter to our attention, we find that the passage of time since interment is a factor which may not be classified as de minimus in deciding whether exhumation is appropriate or whether samples of the decedent's blood and/or tissue can be retrieved so as to render the samplings "available" (under *Greenwood, supra* 402 Pa.Super. 536, 587 A.2d 749) for genetic testing. Stated otherwise, it needs to be assessed whether "reasonable cause" has been established by the appellant to entitle her to exhumation, but inextricably intertwined therewith is a determination of whether "a good possibility" that exhumation would be revealing is negated by the passage of three (3) years since Simonich, Jr.'s death and his embalming so as to jeopardize the securement of sufficient blood and/or tissue samples for testing. See *Batcheldor, supra,* 108 N.C.App. at 282, 423 S.E.2d at 815; *Esgro v. Trezza,* 492 So.2d 422, 423 (Fla.App.1986); see also *Will of Janis,* 157 Misc.2d 999, 600 N.Y.S.2d 416, 419 (1993); *Taxiera v. Malkus,* 320 Md. 471, 578 A.2d 761, 766 n. 7 (1990).

The satisfaction of the quantity and quality of samples "available" in this case has been indicated to exist by the

appellant with her referral to Roche Biomedical Laboratories, Inc. collecting, in an unobtrusive manner, blood samples from the decedent allowing her "to establish paternity." See Record No. 3 at page 3. This is not contested by the appellee and the court made no finding that the lapse of time would impair the integrity of any samplings or the retrieval process itself.

Therefore, in the interest of justice and a search for the truth, the minor-child should be afforded the occasion to minimize the sting of illegitimacy and societal opprobrium which attaches to a child born out of wedlock by allowing him to prove his lineage, and, if such is shown by clear and convincing evidence, to inherit from his father's estate. See *Greenwood*, supra 402 Pa.Super. 536, 587 A.2d 749; *Batcheldor*, supra 108 N.C.App. 275, 423 S.E.2d 810; *Stastny*, supra 178 Neb. 109, 132 N.W.2d 317. This can best be accomplished by allowing exhumation, conditional upon the appellant establishing that the "availability" of blood and/or tissue samples of the decedent is not compromised by the passage of time and embalming rendering their retrieval improbable or highly unlikely to produce results from which testing may be performed. This subject is not common knowledge but is an area for an expert (by testimony or deposition) to enlighten the court for resolution purposes. See, e.g., *Will of Janis*, supra 157 Misc.2d 999, 600 N.Y.S.2d 416; *Stastny*, supra.

As noted by the Supreme Court of Florida on this subject:

If in the course of ascertaining heirship in a proceeding held in probate court for that purpose, it is shown to the satisfaction of the probate judge that the issue of heirship can be disproved by an examination of the body of the decedent for the purpose of proving that she had never given birth to a child, and that such issue is material and can be refuted by no other evidence, then we think it entirely within the power and province of the probate judge having jurisdiction, in the exercise of sound judicial discretion and for the purpose of proving justice and preventing fraud, to enter an order directing that the body be exhumed and an autopsy be performed for such purpose, and that findings of the persons making the autopsy be made available in the trial of the cause. See Wigmore on Evidence, 3rd Ed., Vol. VIII, Sec. 2216(d), p. 170; Sec. 2221, p. 210;

*Gray v. State,* 55 Tex.Cr.R. 90, 114 S.W. 635, [ (1908) ] 22 L.R.A., N.S., 513; 15 Am.Jur. p. 842.

*Ullendorff v. Brown,* 156 Fla. 655, 24 So.2d 37, 40 (1945).

Instantly, the appellant's minor-child is attempting to establish paternity for inheritance purposes, the proof for which may exist in no other venue save for exhumation of the decedent for DNA testing. Such evidence, if produced, might be material to (but not conclusive of) proving paternity by clear and convincing evidence. See *Zearfoss, supra* 435 Pa.Super. 565, 646 A.2d 1238; *Greenwood, supra.* We find that the appellant should be availed the opportunity to prove her case as the guardian for the minor-child, the effectuation of which necessitates a remand and an initial review in the forum of the Orphans' Court of Beaver County.

It will be for the Orphans' Court, in the first instance, to determine whether the appellant's allegations supportive of a finding of paternity either dispense with or necessitate the exhumation of the decedent for DNA testing. To explicate, if the Orphans' Court disbelieves the appellant's evidence (e.g., testimonial reference to the decedent being the sole sex partner during conception and the birth certificate naming the decedent being a by-product thereof[4]), the need to exhume the decedent is mooted since DNA testing is not conclusive of paternity but merely a factor in a chain of elements which compose the parenting bond by clear and convincing evidence. See *Zearfoss, supra.*

However, if the Orphans' Court believes the evidence proffered by the appellant *and,* in the exercise of its discretion, feels that the issue of heirship would be advanced by allowing exhumation for DNA testing, the unique facts of this case would require the Orphans' Court to take testimony on the question of whether the passage of time or embalming will have a deleterious consequence on the retrieval or testing of blood and/or tissue samples. See *Batcheldor, supra* 108 N.C.App. 275, 423 S.E.2d 810; *Alexander, supra* 42 Ohio

---

4. It must be noted that the birth certificate is a self-serving document which is not in and of itself proof of paternity. It is but one factor to be weighed with all of the other evidence presented in deciding the question of paternity. See *Zearfoss, supra.*

Misc.2d 30, 537 N.E.2d 1310; *Stastny,* supra 178 Neb. 109, 132 N.W.2d 317; see also *Esgro,* supra 492 So.2d 422. If the expert evidence proffered indicates to the court that the lapse of time between death and exhumation or embalming will produce insufficient DNA material to perform testing, see *Will of Janis,* supra 157 Misc.2d 999, 600 N.Y.S.2d 416, the motion for exhumation should be denied.

To capsulize, after the presentment of evidence to substantiate the appellant's allegations of parentage, the sufficiency of which shall be for the Orphans' Court to assess in the first instance, the burden of proof having been satisfied in the court's opinion will permit continuation to the second phase: the presentation of evidence disclosing the impact, if any, of the lapse of time since death and embalming on the production of blood and/or tissue samples for DNA testing.

It may be that sufficient evidence could be produced dispensing with the need for exhumation if such other evidence is believed by the Orphans' Court to rise to the level of clear and convincing proof of paternity. *Greenwood,* supra. It will be for the Orphans' Court to make that initial assessment, subject to review under an abuse of discretion standard. *Stastny,* supra.

Accordingly, in light of the novelty of the issue posed for our consideration and the paucity of case law in this jurisdiction on the issue under review, we deem it prudent to avail the Orphans' Court the occasion to make a ruling within the framework and consistent with the precepts outlined herein. Therefore, we reverse the order appealed and remand for proceedings more fully outlined herein.

Order reversed, case remanded for a *procedendo,* and jurisdiction is relinquished.