J-A19033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF DAVID W. ACKLEY, SR  ADAM R. ACKLEY, ADMINISTRATOR OF THE  ESTATE OF DAVID W. ACKLEY, SR. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 2326 EDA 2020 |
| BRITTANY HOPE ACKLEY | : | |

Appeal from the Order Entered November 6, 2020
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  No. 2018-00157

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                  **FILED OCTOBER 4, 2021**

Adam R. Ackley, as administrator of David W. Ackley, Sr.'s estate (Administrator), appeals from the November 6, 2020 orphans' court order, which: (1) ascertained that Brittany Ackley (Brittany) had proven by clear and convincing evidence that she was an heir to David Ackley, Sr.'s estate (Estate); and (2) directed the Administrator to prepare, file, and serve an account of the estate and proposed distribution. **See** Pa.R.A.P. 342(a)(5) (permitting an appeal from an order that determines the status of an estate beneficiary). On appeal, the Administrator dually challenges the court's earlier denial of his request for Brittany to submit to DNA testing as well as the court's ultimate determination that she was an heir to the Estate. In finding no merit

_____

[*] Retired Senior Judge assigned to the Superior Court.

to his first contention and in finding waiver as to his second, we affirm.

In summary, David Ackley, Sr., (David) had three children from an acknowledged marriage. At some point, David entered into another relationship, but never remarried. While David and this subsequent woman were cohabitating, she gave birth to two daughters, with one of them being Brittany.

David is listed on Brittany's birth certificate as her father, and Brittany uses David's surname. Furthermore, David included Brittany in his Veteran's Administration benefits.

David lived with Brittany and her mother until Brittany was approximately eight to nine years old. Several years later, Brittany, having then left her mother's residence, moved into David's home for around five years. While Brittany was living with David, David attended some of Brittany's extracurricular activities, namely cheerleading. After those five years, Brittany moved in with her aunt to complete high school, and concurrent with that event, both David and Brittany's mother granted legal guardianship to the aunt. Following the completion of high school, Brittany moved in with David for another year.

David died intestate. Shortly thereafter, the Administrator petitioned the Register of Wills office to appointed as administrator. The petition listed Brittany as a sibling to the Administrator and included a renunciation from her of her right to become an administrator.

Subsequently, Brittany hired counsel and filed a petition for production of formal accounting and proposed distribution. In response, the Administrator claimed that Brittany was not David's offspring.

Ultimately, the Administrator filed a petition requesting DNA testing of Brittany. After hearing argument, the court denied the Administrator's request. Several months later, the court reconvened to consider evidence of Brittany's status as an heir to the Estate. The court then determined that Brittany had met the burden of clear and convincing evidence in proving that she was David's issue.

Correspondingly, the Administrator filed the present appeal.[1] The relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. Accordingly, this appeal is ripe for review.

On appeal, the Administrator presents two questions:

1. Did the orphans' court err in denying his request for DNA testing to determine if Brittany is the issue of David because: (1) Brittany was born out of wedlock; (2) the burden of submitting to testing is light; (3) the probative value of the test is high; (4) the other potential heirs were willing to undergo testing; and (5) David's genetic material was readily available for comparison?

2. Did the orphans' court err by finding that Brittany proved her claim to be an heir by clear and convincing evidence when, *inter alia*, there was no DNA testing of record?

---

[1] The Administrator did not file a motion for reconsideration nor any other kind of motion analogous to a post-judgment motion.

Appellant's Brief, at 6.

Preliminarily, we note that although he has presented this Court with two distinct questions, the Administrator only has one omnibus argument section in his brief. *See* Appellant's Brief, at 10-12. Such formatting is in violation of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). However, a thorough reading of his brief yields a determination that the Administrator, at the expense of his latter question, has exclusively challenged whether the orphans' court erred in denying his DNA testing request. Accordingly, the Administrator's second question is waived for failure to develop or mention this issue in the argument section of his brief. *See Commonwealth v. Jones*, 815 A.2d 598, 604 n.3 (Pa. 2002) (establishing that a failure to pursue a claim in the body of a brief results in waiver).

As to whether it was in error for the orphans' court to deny the Administrator's petition seeking compulsory DNA testing of Brittany, we find no support for the proposition that denial of such a request was an abuse of discretion or error of law.

While paternity testing for a child born out of wedlock can be requested by "any party to an action to establish paternity," 23 Pa.C.S.A. § 4343(c)(1),

thereby requiring the court to order "the child and the parties to submit to genetic tests[,]" *id*., the Administrator cites to no equivalent statutory subsection governing intestate estate distribution. Instead, the Administrator concedes that even in child support actions, "denial of testing is absolutely proper where there are clear grounds for estoppel, such as when a putative father enters a consent decree to support [a child]." Appellant's Brief, at 10.

We agree with the Administrator that "the actual degree of consanguinity is the determining factor for inheritance" in an intestate estate distribution. *Id*.; *see also* 20 Pa.C.S.A. § 2104(1). However, a consanguinity determination that adjudicates whether an individual born out of wedlock is a descendant of a male decedent allows for proof in three separate ways. *See* 20 Pa.C.S.A. § 2107(c). Specific to this case, the court held that Brittany clearly and convincingly had established that David's tangible actions while alive meant that he openly considered Brittany to be his daughter and supported her as such. *See* 20 Pa.C.S.A. § 2107(c)(2) ("If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence."). Simply put, a plain reading of that section indicates no requirement of any kind of genetic proof in order to make a descendant determination.

To support his position that he should be allowed to seek DNA testing of another party, the Administrator cites to *In re Estate of Greenwood*, 587

A.2d 749 (Pa. Super. 1991), and **Wawrykow v. Simonich**, 652 A.2d 843 (Pa. Super. 1994). In the former case, this Court determined that the potential child of a decedent could petition the court for an order requiring the genetic testing of that decedent's blood, despite the administrator's adamant refusals to provide the blood samples. **See In re Estate of Greenwood**, 587 A.2d at 756-57 (predicating its holding, in part, on the strong public policy position attempting to eliminate the stigma of illegitimacy). In the latter case, this Court ascertained that a potential heir "attempting to establish paternity for inheritance purposes," should, if necessary to demonstrate such a claim by clear and convincing evidence, be allowed to exhume the decedent for testing purposes, as "the proof … may exist in no other venue[.]" **Wawrykow**, 652 A.2d at 848. In conclusion, the Administrator additionally reasons that, because subpoenas are routinely issued for, *inter alia*, medical exams in personal injury and workers' compensation cases, he should be allowed to request the same from the court in this present matter. **See** Appellant's Brief, at 12.

The factual underpinnings of the authority cited by the Administrator are either wholly inapplicable, as in the case of medical subpoenas, or fail to parallel the procedural situation that was before the orphans' court. In the present case, it was the Administrator attempting to disestablish that Brittany was an heir to the Estate. The court found that the "Administrator's petition effectively pre-empt[ed]" Brittany's burden to establish herself as David's

heir. Orphans' Court Opinion, 7/8/20, at 3 (opinion accompanying order denying DNA petition). The court continued by indicating that it "could expect a petition for DNA testing in an attempt by [Brittany] to provide clear and convincing evidence of paternity, but not necessarily a petition from the Administrator, who is an additional heir, to disprove paternity." *Id*.

The Administrator does not contest that it was Brittany's burden to establish herself as an heir. In fact, the court found that "the relief requested would force [Brittany] to engage in such testing when she has other means available to attempt to prove she is [David's] child under Section 2107(c)." *Id*., at 6. We see no basis, statutory or otherwise, to conclude that the Administrator has the inherent ability to seek a DNA test of an individual attempting to demonstrate paternity from a decedent. While, of course, DNA testing would be probative (if not effectively conclusive) as to whether Brittany is an heir to the Estate, it does not follow that there is authority for an administrator to offensively seek a DNA sample from a paternity-based estate claimant.

Even construing the relevant intestacy statutes liberally, an attempt to preemptively exclude an individual from his or her potential estate share is incongruous with the thrust of prior case law, which exclusively places the burden of proof on the one claiming to be an heir to an estate. Absent any basis to compel Brittany to submit to DNA testing when she is not the party requesting it, we are constrained to find that the trial court did not err when

it denied the Administrator's request.

Moreover, as stated, *supra*, 20 Pa.C.S.A. § 2107 allows for a potential child to demonstrate paternity by way of clear and convincing evidence if the father, during his lifetime, openly holds that child out as his own, receives that child into his home, or supports him or her. No DNA test is or was necessary to make this determination and its absence was not fatal in the court's holding that Brittany was David's heir. After holding a hearing, the orphans' court detailed thirty-five findings of fact and notably found:

> Here, [David] was listed as [Brittany's] father on her birth certificate. [David] openly held [Brittany] out as his own child and never denied she was his daughter. [Brittany] lived with [David], her mother and her sister, who was also the daughter of [David] and [Brittany's] mother, from birth until she was 8 or 9 years old. During that time, [David] supported [Brittany], and they all lived together as a family.

> Upon the separation of [Brittany's] mother and [David], [Brittany] continued to be supported by [David] through receipt of his V.A. benefits by her mother. [Brittany] then moved back in with [David] in 2007 and lived with him from when she was in 8th or 9th grade through 11th grade. During that time, [David] supported [Brittany] and held her out as his daughter. He even attended her cheerleading events. There was no formal custody order between [David] and [Brittany's] mother, but all parties were in agreement with [Brittany] living with [David] at the time.

> [Brittany] moved in with her aunt to finish her senior year in high school. [David's] V.A. benefit was then payable to [Brittany's] aunt as support for [Brittany]. [Brittany's] mother and [David] signed guardianship papers for [Brittany] to live with her aunt at the time. [Brittany] eventually moved back in with [David] for a period of time after she turned 18 and had graduated from high school in 2011 until June 2012. These facts were credible and uncontested. It shows that [David] held [Brittany] out to be his child, received her in his home, and also provided support for her when needed.

Orphans' Court Opinion, 11/6/20, at 7-8.

Although the Administrator waived his challenge as to whether Brittany demonstrated paternity by clear and convincing evidence, we find that the court did not abuse its discretion in making such a determination. The court's finding is well-supported by the record, and even if it were properly challenged, we would see no reason to reverse.

Accordingly, we affirm the orphans' court order determining Brittany to be an heir of David's Estate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2021