J-S08004-22

2022 PA Super 107

U.S. BANK TRUST NATIONAL : IN THE SUPERIOR COURT OF
ASSOCIATION AS TRUSTEE OF THE : PENNSYLVANIA
LODGE SERIES III TRUST :
:
:
Appellant :
:
:
:
v. :
:
: No. 333 MDA 2021
:
UNKNOWN HEIRS, SUCCESSOR, :
ASSIGNS AND ALL PERSONS, FIRMS :
OR ASSOCIATIONS CLAIMING :
RIGHT, TITLE OR INTEREST FROM :
OR UNDER HELEN A. BROLLEY, :
DECEASED AND JAMES M. BROLLEY :

Appeal from the Order Entered January 13, 2021
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2007-08805

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

OPINION BY BOWES, J.: **FILED:  JUNE 8, 2022**

U.S. Bank Trust N.A. ("U.S. Bank"), as trustee of the Lodge Series III

trust, appeals from the January 13, 2021 order denying its motion to strike

and substitute successor plaintiff.  We reverse.

This Court has summarized the factual history of this case, as follows:

On February 7, 2003, Helen Brolley executed a mortgage and note
in the principal amount of $65,000, in favor of Wells Fargo Home
Mortgage, Inc., [("Wells Fargo")] on her property at 150 Laurel
Drive, Mountain Top, Pennsylvania, 18707 ("the Property").  The
mortgage was duly recorded with the Recorder of Deeds of
Luzerne County.  The note provided for interest at an annual rate
of 8.250%.  On November 13, 2003, she transferred her interest
to her son via deed, which was duly recorded.  Helen Brolley died
on March 15, 2006.

>It is undisputed that no monthly payments of principal and interest were made on or after April 1, 2006.

***Wilmington Trust, Nat. Assoc. v. Unknown Heirs***, 219 A.3d 1173, 1175-76 (Pa.Super. 2019) (cleaned up). On August 1, 2007, Wells Fargo filed a complaint in mortgage foreclosure against James Brolley, who did not dispute that the mortgage was in arrears. ***See*** Answer, 9/17/07, at ¶ 1 ("Defendant James Brolley admits mortgage payments are past due.").

On June 26, 2009, EMC Mortgage Corporation filed a motion for summary judgment. Several weeks later, EMC Mortgage Corporation filed a *praecipe* to substitute itself as the successor to Wells Fargo pursuant to Pa.R.C.P. 2352, explaining that the mortgage had been reassigned. ***See*** *Praecipe* for Voluntary Substitution, 7/8/09, at 1-2. The trial court seems not to have recognized the significance of the first substitution *praecipe*. Accordingly, it granted the motion for summary judgment and entered an *in rem* judgment in favor of Wells Fargo and against Mr. Brolley. ***See*** Order, 9/9/09, at 1. Thereafter, EMC Mortgage Corporation filed a second *praecipe* to mark the judgment for use in its name. On March 22, 2010, EMC Mortgage Corporation filed a *praecipe* for a writ of execution as to the judgment. Upon petition by EMC Mortgage Corporation, the judgment was subsequently amended to reflect additional damages and costs. ***See*** Order, 9/27/10, at 1-2 (unpaginated). A sheriff's sale of the Property was scheduled for October 1, 2010. However, on September 30, 2010, Mr. Brolley filed a notice of Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Middle District of

Pennsylvania. **See** Notice of Bankruptcy Case Filing, 9/30/10, at 1-12. Consequently, the sheriff's sale was stayed.[1]

On June 16, 2011, EMC Mortgage Corporation filed a *praecipe* for substitution requesting that EMC Mortgage LLC ("EMC") replace it as plaintiff in the above-captioned case due to a corporate name change. The same day, EMC Mortgage Corporation also filed a *praecipe* requesting that the judgment similarly be marked for use by EMC.

In March 2012, EMC commenced a second mortgage foreclosure action with respect to the Property. In an apparent attempt to avoid the preclusive effect of the final judgment already issued in this case, EMC then filed a *praecipe* that purported to discontinue the instant action and to vacate the underlying judgment. **See** *Praecipe*, 4/22/13, at 1 (unpaginated) ("Please [v]acate the judgment entered and mark the action [d]iscontinued and [e]nded without prejudice."). No further activity occurred in this case while the second mortgage foreclosure lawsuit remained active.

In that parallel proceeding, the trial court held a bench trial and, ultimately, issued a second judgment in favor of EMC on July 23, 2015. **See**

---

[1] The certified record offers no information as to the current status of the bankruptcy proceedings instituted by Mr. Brolley. However, there is nothing to suggest that the stay of sheriff's sale has ever been lifted. Moreover, there is no indication that the *in rem* judgment issued by the trial court has been discharged as a result of the bankruptcy proceedings. **See also**, **e.g.**, **Johnson v. Home State Bank**, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam* while leaving intact another—namely, an action against the debtor *in rem*."). Indeed, "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." **Id**. at 83.

***EMC Mortgage, LLC v. Unknown Heirs***, ***et al***., 153 A.3d 1110 (Pa.Super. 2016) (unpublished memorandum at 1). On appeal, this Court vacated and remanded for the trial court to consider the affirmative defenses of *res judicata* and collateral estoppel. Upon remand, "the trial court ruled that the defense of *res judicata* applied to the prior judgment in mortgage foreclosure . . . but not to subsequent defaults under the mortgage." ***Wilmington***, ***supra*** at 1176. Contemporaneously, EMC assigned the mortgage to Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for VM Trust Series 3, a Delaware statutory trust ("Wilmington"). ***Id***. at 1177. The caption in the second action was updated to reflect this assignment.

The trial court again entered judgment in favor of EMC. On appeal, this Court held that the second mortgage foreclosure action was completely barred under the doctrine of *res judicata*, vacated the judgment issued in the second lawsuit, and dismissed the second mortgage foreclosure action with prejudice. ***Id***. at 1181. Specifically, we held as follows:

> We find that the prior judgment in mortgage foreclosure bars this subsequent action in mortgage foreclosure. It is undisputed that the parties herein were parties or privies to the parties in the prior action, and that they are suing and being sued in the same capacities. Both are actions for mortgage foreclosure based upon default under the same mortgage instrument. Having concluded that the mortgage merged into the prior judgment in mortgage foreclosure, and that thereafter, no obligation remained to make monthly payments, there can be no continuing default upon which to maintain the current mortgage foreclosure action. This matter was fully and finally litigated between the parties in the prior action, and the judgment in mortgage foreclosure entered in that action bars the current action in mortgage foreclosure.

*Id*. (cleaned up). We declined, however, to opine on the validity of the *praecipe* to vacate and discontinue entered in the instant, first foreclosure action. *Id*. at 1181 n.5.

On April 13, 2020, U.S. Bank filed a motion requesting that the trial court strike the *praecipe* to discontinue entered almost exactly seven years earlier by EMC and substitute Wilmington as the named plaintiff due to the reassignment of the mortgage.[2] U.S. Bank framed its request, as follows:

> 22. In view of the Superior Court's dismissal of the Second Mortgage Foreclosure Action with prejudice by reason of the final

---

[2] U.S. Bank's putative interest or involvement in this case is not evident from the certified record. It was not a party in either of the mortgage foreclosure actions noted above. It is clear in its motion and attached brief that U.S. Bank is advancing these arguments on behalf of Wilmington. But there are no *indicia* that it has assumed any relevant fiduciary role as to Wilmington. Moreover, U.S. Bank did not seek to intervene pursuant to the Pennsylvania Rules of Civil Procedure. *See* Pa.R.C.P. 2326-30. Stated simply, there are significant questions concerning U.S. Bank's standing to maintain an appeal in this matter. *See* Pa.R.A.P. 501 (providing that only a "party" or a "fiduciary" to the underlying lawsuit who has been "aggrieved by an appealable order" has standing to appeal). Our case law interpreting Rule 501 evinces that this rule concerns standing. ***See Ratti v. Wheeling Pittsburgh Steel Corp.***, 758 A.2d 695, 700 (Pa.Super. 2000) (holding that an appeal must be quashed when it is filed by a party that is "not 'aggrieved' and therefore, does not have standing to appeal").

This Court, however, is prohibited from raising such questions of standing *sua sponte*. ***See In re Duran***, 769 A.2d 497, 501 n.2 (Pa.Super. 2001) ("The issue of standing is generally distinguishable from the issue of subject matter jurisdiction. . . . Therefore, the issue of standing cannot be raised *sua sponte* and is waived if not properly raised."). Neither Mr. Brolley nor the trial court has addressed this issue. Indeed, the trial court's Rule 1925(a) opinion treats Wilmington as the appellant in this matter without further explanation. ***See*** Trial Court Opinion, 6/21/21, at 1. Thus, although the certified record presents no indication that U.S. Bank has an interest in this case, we are precluded from quashing this appeal pursuant to Rule 501.

judgment in the First Mortgage Foreclosure Action, [Wilmington] seeks the entry of an Order which strikes the *praecipe* to vacate the judgment in that action, reactivates the First Mortgage Foreclosure Action and substitute as [Wilmington], the real party in interest.

23. The purpose of the within motion is to reactivate the First Mortgage Foreclosure Action and to substitute the proper party in interest as plaintiff in the case, so that [Wilmington] can proceed to its remedy of sheriff's sale more than ten (10) years after summary judgment was first entered in its favor and against Defendant.

Motion to Strike *Praecipe* to Vacate Judgment, Reactivate Case, and Substitute Proper Party Plaintiff, 4/13/20, at ¶¶ 22-23 (hereinafter, "Motion to Strike" or "motion to strike").

In its supporting brief, U.S. Bank took the position that the *praecipe* filed by EMC in April 2013 was invalid and that its continued efficacy would deprive Wilmington of the opportunity to execute upon the judgment:

On the strength of the decision . . . of the Superior Court in the Second Mortgage Foreclosure, only the judgment in [Wilmington's] favor and against Defendant Brolley, in this action, remains valid and in full force and effect. It was entered after contested litigation, and the April 22, 2013 filing of a *praecipe* was ineffective to vacate it. The holder of the judgment is entitled to enforce it by proceeding to a sheriff's sale of the Property. Otherwise, [Wilmington] will be deprived of the ability to enforce the judgment and thereby recover its security for financing extended where Defendant has failed to make any payments for fourteen (14) years.

Brief in Support of Motion to Strike, 4/13/20, at 8-9. Mr. Brolley filed a one-page *pro se* response that largely agreed with the position taken by U.S. Bank. ***See*** Answer and Objection, 9/21/20, at 1 (unpaginated) ("With all due respect, [the trial court] erred by failing to rule [sic] *praecipe* was illegal.").

- 6 -

The trial court held a hearing on the motion to strike, wherein U.S. Bank argued that proper procedure had not been observed and that the *praecipe* was invalid. **See** N.T. Hearing, 8/13/20, at 5 ("[I]t has no effect per the rules of civil procedure."). Although he was notified of the proceeding, Mr. Brolley did not participate in the hearing. On January 13, 2021, the trial court denied the motion to strike. U.S. Bank filed a motion for reconsideration, which was also denied. On February 12, 2021, U.S. Bank filed a timely notice of appeal from the order denying its motion to strike.[3] The trial court directed U.S. Bank to file a concise statement pursuant to Pa.R.A.P. 1925(b) and it timely complied. Thereafter, the trial court filed a Rule 1925(a) opinion.

---

[3] This Court issued a rule to show cause upon U.S. Bank as to why this appeal should not be quashed in light of the fact that "'[a] praecipe to discontinue constitutes a final judgment.'" **See** Order, 6/24/21, at 1 (quoting **Levitt v. Patrick**, 976 A.2d 581, 587 (Pa.Super. 2009)). Thus, we directed U.S. Bank to address the appealability of the trial court's January 13, 2021 order. It filed a response arguing that "[b]y denying [U.S. Bank's] motion to strike the *praecipe*, the ruling expressed in the January 13, 2021 [o]rder resolves all issues between the parties." U.S. Bank's Brief in Response, 9/15/21, at 3. Although this Court discharged the rule to show cause, we reserved a definitive ruling on this issue of appealability.

As noted above, a discontinuance is a final judgment for the purposes of appealability. **See Levitt**, **supra** at 587. However, U.S. Bank filed a motion requesting that the trial court strike off the discontinuance in this case. The trial court's consideration and entry of an order denying the motion to strike constituted new proceedings in this case. Furthermore, that ruling reaffirmed the preclusive effect of the discontinuance and, thereby, disposed of all claims and all parties. Accordingly, the order was final and appealable pursuant to Pa.R.A.P. 341(a)-(b)(1) (providing that "an appeal may be taken as of right from any final order of a government unit or trial court," including an order that "disposes of all claims and of all parties").

U.S. Bank raises the following issues for our consideration:[4]

1. Did the trial court err in denying [U.S. Bank's] motion to strike *praecipe* dated April 22, 2013 to vacate final judgment and [discontinue] action, so the case would be reactivated?

2. Is [U.S. Bank] entitled to prosecute the action in the name of Wilmington Trust as . . . the real party in interest?

Plaintiff's brief at 4.

U.S. Bank's first claim concerns the trial court's denial of its request to strike off the discontinuance. Instantly, the trial court's refusal to strike off the discontinuance was largely based upon equitable grounds:

For lack of a better phrase, arguably, [EMC] "went all in" on the [second mortgage foreclosure action] and determined that filing the *praecipe*, which was intended to vacate the judgment [in this case], was necessary in order to proceed in the 2012 docket. After approximately seven years of contested litigation[,] the Pennsylvania Superior Court dismissed the 2012 action with prejudice. With no way to collect a judgment in the 2012 action[, U.S. Bank] filed the motion to strike the April 22, 2013 *praecipe* and now attempts to collect under the 2007 docket.

The principles of fairness and finality embedded in the doctrine of *res judicata* led this [c]ourt to deny [U.S. Bank's] motion to strike the April of 2013 *praecipe*. The principle[s] of fairness dictate that a bank or mortgage company cannot have a judgment against a defendant in one action and commence a new action for subsequent defaults. As Pennsylvania law has developed, it is clear that such a situation would trigger the doctrines of *res judicata* and merger. In this matter[,] the Pennsylvania Superior Court found that the judgment entered in the 2007 action had *res judicata* effects which barred the 2012 judgment. In order to fully prosecute the 2012 action[, Wilmington] had to believe that the *praecipe* to vacate the judgment was effective and that the 2012 action was the only active action. To let [U.S. Bank] have it both ways would be inherently unfair to [Mr. Brolley] who thought that

_____

[4] Mr. Brolley has not filed a brief in this matter.

the Pennsylvania Superior Court's opinion [in **Wilmington**] concluded the litigation between the parties.

. . . . Given the factual circumstances of the case at bar, the decision to deny [U.S. Bank's] motion to vacate the April 2013 *praecipe* was rooted in the fundamental principles of fairness and finality. At this point, [U.S. Bank] is not seeking a second bite at the apple, [it is] actually seeking a third bite.

Trial Court Opinion, 6/21/21, at 15-17.

Discontinuances in the civil context are governed by Pa.R.C.P. 229, which provides as follows:

(a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff **before commencement of the trial.**

. . . .

(c) The court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice.

Pa.R.A.P. 229(a), (c) (emphasis added). Under this rule, the decision of whether to strike a discontinuance is vested in the sound discretion of the trial court and we will not disturb its ruling on such a matter absent an abuse of that discretion. **See Robinson v. Pennsylvania Hosp.**, 737 A.2d 291, 292 (Pa.Super. 1999) (citing **Foti v. Askinas**, 639 A.2d 807, 808 (Pa.Super. 1994)). The trial court must consider "all facts and weigh equities," while bearing in mind "the benefits or injuries which may result to the respective sides if discontinuance is granted." **Foti**, **supra** at 808.

It is well-established that a discontinuance should be stricken if the only purpose of its entry is to seek another proceeding by a frustrated litigant: "'Whenever, therefore, it appears a party discontinues one suit, for the purpose, merely, of instituting another for the same cause of action elsewhere, the court, on motion, will set aside the discontinuance, and reinstate the former suit, and subject the party to the consequences of his own acts.'" **Brown v. T.W. Phillips Gas & Oil Co.**, 74 A.2d 105, 108 (Pa. 1950) (cleaned up); **see also Pohl v. NGK Metals Corp.**, 936 A.2d 43 (Pa.Super. 2007) (same); **Quattrone v. Quattrone**, 361 A.2d 399, 400-01 (Pa.Super. 1977) (same). This Court has also disapproved of discontinuances entered with the purpose of avoiding the preclusive effect of dispositive motions. **See Nichols v. Horn**, 525 A.2d 1242, 1243 (Pa.Super. 1987).

At the outset of our analysis, we note that the discontinuance complained of in this case was entered more than two years after the trial court had entered a final judgment in favor of Wells Fargo and against Mr. Brolley. As noted above, the text of Rule 229(c) states that a voluntary discontinuance is only available prior to "trial." **See** Pa.R.C.P. 229(c). While the instant civil action concluded with the entry of summary judgment as opposed to a trial followed by a verdict, we find no authority in Pennsylvania law, nor can we conceive of any, that would countenance discontinuance of a case more than two years after a final decision has issued.

The more troubling aspect of the at-issue *praecipe*, however, is its purported *vacatur* of the judgment. This Court has discussed the finality of judgments entered due to adverse civil proceedings, as follows:

> Unlike a judgment entered by confession or by default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after it has become final. A judgment entered in adverse proceedings becomes final if no appeal is filed within thirty days. **See** 42 Pa.C.S. § 5505. Thereafter, the judgment cannot normally be modified, rescinded or vacated. Similarly, it cannot be "opened."
>
> This doctrine, respecting judgments entered in adverse proceedings, has a very definite function, namely, to establish a point at which litigants, counsel and courts ordinarily may regard contested lawsuits as being at an end. A contested action yields a judgment in which the value of finality is greatest. There has been a decision following an examination of the critical issues through bilateral participation of the parties . . . . For all the reasons that finality of judgments is important, such a judgment should be invulnerable except upon a showing of extraordinary miscarriage.
>
> A party may always request a court to reconsider a judgment entered in adverse proceedings. However, such a request must be made within thirty days. . . .
>
> Although the inability of a court to grant relief from a judgment entered in a contested action after the appeal period has expired is not absolute, the discretionary power of the court over such judgments is very limited. Generally, judgments regularly entered in adverse proceedings cannot be opened or vacated after they have become final, unless there has been fraud or some other circumstance so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court.

***Simpson v. Allstate Ins. Co.***, 504 A.2d 335, 337 (Pa.Super. 1986) (cleaned up); ***see also Shelly Enterprises, Inc. v. Guadagnini***, 20 A.3d 491, 493-94 (Pa.Super. 2011) (same).

Here, EMC did not petition the trial court for relief with respect to the judgment entered in these adverse civil proceedings. It did not attempt to make a showing of "extraordinary cause" to justify vacating, opening, or otherwise altering the judgment entered in favor of Wells Fargo. Rather, EMC attempted to vacate by *praecipe* without involving the trial court or providing any opportunity for Mr. Brolley to be heard in opposition. While no Pennsylvania state court has directly addressed this precise procedural irregularity, the holding in ***In re Faulkner***, 593 B.R. 263 (E.D.Pa. 2018) provides persuasive authority regarding this issue.[5] In that case, a plaintiff obtained a default judgment in mortgage foreclosure in February 2003. Approximately seven years later, the same plaintiff filed a *praecipe* "that purported to vacate the 2003 [j]udgment and discontinue the action." ***Id***. at 274. Thereafter, the plaintiff pursued a number of additional mortgage foreclosure actions that culminated in bankruptcy proceedings.

In reviewing the efficacy of the plaintiff's *praecipe*, the district court found that it was invalid. Two specific concerns motivated that conclusion.

---

[5] The decisions of federal courts lower than the United States Supreme Court possess a persuasive authority, but the interpretation of state law contained in such holdings is not binding upon this Court. ***See Martin v. Hale Products, Inc.***, 699 A.2d 1283, 1287 (Pa.Super. 1997).

The first was that "[u]nder the Pennsylvania Rules of Civil Procedure and related case law, the standard mechanisms of undoing a judgment – opening and striking – require some court involvement." *Id*. at 287. The district court also noted that "[w]hen *vacatur*-by-praecipe is accompanied by a discontinuance, . . . the very case in which a party might object is closed and ended, imposing an additional procedural hurdle to a party opposing vacatur." *Id*. at 289. Thus, the discontinuance was not successful in vacating the judgment where the other party to the litigation had "no opportunity to contest it and no judicial officer signed an order vacating the judgment." *Id*.

Like the bankruptcy court, we find no basis in Pennsylvania law for the proposition that a plaintiff may *sua sponte* discharge a final judgment by utilizing a *praecipe* to discontinue. As in ***Faulkner***, we observe that "a judgment is not a unilateral right held by the winning party, but a determination under the control of the court." *Id*. at 287 (citing ***Simpson***, ***supra*** at 337). Accordingly, the *praecipe* filed by EMC was ineffectual to the extent that it purported to discharge the September 9, 2009 judgment without involving either the trial court or Mr. Brolley.

We are not unsympathetic to the trial court's position. The succession of plaintiffs in this case has created a procedural morass that is entirely of their own making. After Wells Fargo secured a final judgment, the mortgage was reassigned to EMC, which found it prudent to file a discontinuance in this case in an attempt to pursue a duplicative foreclosure action. When that

gambit ultimately failed some seven years later, the mortgage had been reassigned to Wilmington. Now faced with the prospect that Wilmington will be unable to collect on the original judgment, U.S. Bank is attempting to unwind these earlier procedural decisions that, frankly, have needlessly consumed significant judicial resources.

Yet, the discontinuance must be struck off nonetheless. Viewed through the lens of the case law recited above, the discontinuance entered by EMC resembles nothing so much as a collateral assault on the judgment and an attempt to circumvent its preclusive effect. Such gamesmanship cannot be countenanced under Pennsylvania law. Furthermore, we must not permit practice that would allow one party to a litigation to discharge a final judgment on its own authority. Based upon the foregoing, we conclude that the trial court abused its discretion in denying the motion to strike. Both procedurally and substantively, the at-issue *praecipe* is improper, invalid, and erroneous. Thus, we reverse the order of the trial court to the extent that it declined to strike off the discontinuance.

Turning to the second issue, U.S. Bank also sought to substitute Wilmington as the plaintiff in this matter. **See** Brief in Support of Motion to Strike, 4/13/20, at 9. Specifically, Plaintiff averred that EMC had reassigned its interest in the mortgage to Wilmington, which is supported in the documentation attached to the motion. **Id**. at Exhibit D (assignment of

mortgage to Wilmington by EMC). In its opinion, the trial court largely does not address this aspect of U.S. Bank's prayer for relief.

Voluntary substitution of successors is governed by Pennsylvania Rule of Civil Procedure 2352, which provides that "[t]he successor may become a party to a pending action by filing of record a statement of the material facts on which the right to substitution is based." Pa.R.C.P. 2352(a). Under the Rules of Civil Procedure, "successor" is defined as "anyone who by operation of law, election or appointment has succeeded to the interest or office of a party to an action." Pa.R.C.P. 2351. This Court has held that documentation attached to a substitution *praecipe* satisfies the requirement that the party submit a material statement of facts. ***See Bayview Loan Servicing LLC v. Wicker***, 163 A.3d 1039, 1047 (Pa.Super. 2017).

As noted immediately above, there is no dispute that the documentation attached to Plaintiff's motion would support a conclusion that EMC assigned its rights and obligations under the mortgage to Wilmington in this matter.[6]

_____

[6] As an initial matter, we note that the text of Rule 2352(a) provides that successor substitution is only available in "pending" matters. ***See*** Pa.R.C.P. 2352(a). There is scant precedent, however, regarding the proper timing of a request for substitution. Our case law suggests that an action remains "pending" for substitution purposes at least up until the entry of judgment. ***See Clinton v. Giles***, 719 A.2d 314, 318 (Pa.Super. 1998) ("We detect no error in decision of [plaintiff] to file her request for substitution after the verdict . . . . [A]n action is pending in the Court of Common Pleas up to the moment judgment is entered." (cleaned up)). No court, however, has yet ruled that substitutions after the entry of judgment are *per se* improper. Moreover, this Court has permitted successor substitution in circumstances
*(Footnote Continued Next Page)*

*See* Brief in Support of Motion to Strike, 4/13/20, at Exhibit D.  Our Supreme

Court has discussed such assignments, as follows:

> An assignment is a transfer of property or a right from one person
> to another; unless qualified, it extinguishes the assignor's right to
> performance by the obligor and transfers that right to the
> assignee.  Under the law of assignments, the assignee succeeds
> to no greater rights than those possessed by the assignor.  An
> assignee's rights, however, are not inferior to those of the
> assignor.  Ultimately, an assignee stands in the shoes of the
> assignor.  Privity is not an issue in cases involving assignment
> claims; an assignee does not pursue a cause of action in its own
> right.

*Crawford Cent. School Dist. v. Com.*, 888 A.2d 616, 619-20 (Pa. 2005)

(cleaned up).  Thus, Wilmington stands in EMC's shoes with respect to

whatever remains of the underlying litigation in this matter.  *See*

*CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 68 (Pa.Super. 2016) ("In a

mortgage foreclosure action, the mortgagee is the real party in interest.");

*see also U.S. Bank N.A. v. Mallory*, 982 A.2d 986, 994 (Pa.Super. 2009)

(indicating mortgage assignee may sue as real party in interest).  Overall,

there seems to be little question regarding whether or not Wilmington is the

real party in interest with respect to the Property.

---

analogous to this case without objection.  *See*, *e.g.*, *U.S. Bank Nat. Assoc. v. Rivard*, 224 A.3d 799 (Pa.Super. 2019) (non-precedential decision at 1) (observing without objection that a party plaintiff was substituted pursuant to Rule 2352 after the entry of a summary, *in rem* judgment in a mortgage foreclosure action).  Pursuant to Pa.R.A.P. 126(b)(1)-(2), we may cite this "non-precedential decision" filed after May 1, 2019, for its persuasive value. *See In re B.W.*, 250 A.3d 1163, 1169 n.4 (Pa. 2021).  Thus, we discern timing is not an impediment to the substitution request submitted here.

- 16 -

Accordingly, we must also reverse the trial court's order to the extent that it denied U.S. Bank's request to substitute Wilmington for EMC. Here, there seems to be no relevant basis upon which to deny the request.

We reiterate, however, that the mortgage in this case merged into the final judgment entered by the trial court. **See Wilmington**, **supra** at 1180 ("'The entry of a foreclosure judgment fixes the positions of the parties: the mortgage merges into the judgment and . . . [t]he debt secured by the mortgage is accelerated and is immediately due and payable in its entirety as set forth in the judgment.'") (quoting **Faulkner**, **supra** at 282). This doctrine of merger means that the terms of the underlying mortgage "no longer provide the basis for determining the obligations of the parties," since "there is no mortgage that could be in default or give rise to a new cause of action in mortgage foreclosure." **Id**. Thus, while Wilmington may be capable of executing the long-delayed judgment in the above-captioned case, it cannot utilize this assignment as a vehicle to pursue a third foreclosure action.[7]

Order reversed. Case remanded. Jurisdiction relinquished.

Judge McCaffery joins this Opinion.

_____

[7] We express no opinion as to the ultimate validity of the judgment beyond holding that it could not be stricken through a *praecipe* to discontinue. Aside from striking off the discontinuance, no party has yet moved to fulfill execution of the judgment. **See Kaib v. Smith**, 684 A.2d 630, 632 (Pa.Super. 1996) ("The purpose of a sheriff's sale in mortgage foreclosure proceedings is to realize out of the land, the debt, interest, and costs which are due, or have accrued to, the judgment creditor."). Accordingly, that issue is not before us.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2022